UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHLEEN O'SHEA and<br>SANDEEP TRISAL<br>on behalf of themselves and all<br>others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>P.C. RICHARD & SON, LLC (d/b/a P.C.<br>Richard & Son) and P.C. RICHARD & SON,<br>INC. (d/b/a P.C. Richard & Son),<br><br>  Defendants. | Case No. 2:15-cv-09069-KPF |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, by their counsel of record, bring this action on their own behalf and on behalf of all others similarly situated, and allege the following upon personal knowledge, or where there is not personal knowledge, upon information and belief:

**PRELIMINARY STATEMENT**

1. Plaintiffs on behalf of themselves and all others similarly situated bring this action against P.C. Richard & Son, LLC (d/b/a P.C. Richard & Son) and P.C. Richard & Son, Inc. (d/b/a P.C. Richard & Son) (together, "Defendants") based on Defendants' violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. §§ 1681 *et seq.*

2. FACTA provides in relevant part that "**no person** that accepts credit cards or debit cards for the transaction of business **shall print** . . . **the expiration date upon any receipt provided to the cardholder** at the point of the sale or transaction" 15 U.S.C. § 1681c(g) (emphases added.)

1

3. The law gave merchants who accept credit and or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006. Although Defendants had up to three years to comply, Defendants have willfully violated this law and failed to protect Plaintiffs and others similarly situated against identity theft and debit card fraud by printing the expiration date of the card and the last four digits of the card number on receipts provided to credit card and debit card cardholders transacting business with Defendants. This conduct is in direct violation of FACTA.

4. Moreover, although Plaintiff Kathleen O'Shea's counsel served Defendants on or about November 2, 2015 with a letter (together with the then not yet filed Complaint) demanding that Defendants cease and desist their FACTA violations, and this lawsuit was thereafter filed on November 18, 2015 (see Complaint, Document No. 1) and Defendants each executed a Waiver Of The Service Of Summons form on December 9, 2015 (see Document Nos. 7 and 8), Defendants continued to commit FACTA violations until at least August 17, 2016. Indeed, Plaintiff Sandeep Trisal received from Defendants a credit/debit card receipt on May 2, 2016 which contained, among other things, Mr. Trisal's card's expiration date and the last four digits of his card number. Thus, rather than cease and desist FACTA violations after Defendants were served with the November 2, 2015 letter, Defendants violated their customers' FACTA rights at least until August 17, 2016 (approximately 9½ months after they were served with the November 2, 2015 letter demanding that they cease and desist their FACTA violations). That Defendants were violating FACTA until at least August 17, 2016 was also addressed with the Court and Defendants' counsel during an in-person court hearing in this case on August 18, 2016, and that resulted in the Court permitting Plaintiff Kathleen O'Shea to file an amended complaint in this matter to, among other things, broaden the Class definition to include credit card receipts

and to join Mr. Trisal as an additional named Plaintiff. These facts further underscore that Defendants' conduct was willful.

5. In the statement provided during his signing of FACTA in 2003, the President underscored the importance of the legislation in combating rampant identity theft:

> This bill also confronts the problem of identity theft. A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs. With this legislation, the Federal Government is protecting our citizens by taking the offensive against identity theft.

6. Courts have likewise emphasized the purpose of FACTA. For example, the Ninth Circuit recently emphasized that "[i]n fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'" *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) (quoting 149 Cong. Rec. 26,891 (2003) (statement of Sen. Shelby)).

7. Similarly, the Seventh Circuit recently explained the importance of Congress' prohibition against disclosing debit and credit card expiration dates in combating card fraud:

> The idea behind requiring [an expiration date's] deletion is that, should the cardholder happen to lose the receipt of a transaction, the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information and thus be able to make purchases that the seller will think were made by the legitimate cardholder.
>
> A typical credit card has 16 digits and an expiration date that is the last day of a designated month and year. Even if the identity thief has all 16 digits, without the expiration date he may be unable to use the card. . . . It's common in telephone and internet transactions for the consumer to be asked for an expiration date, and most systems will not allow the would-be customer to keep guessing at the date, as the guessing suggests that he may be an identity thief.
>
> Additional reasons for requiring deletion of the expiration date include that expiration dates combined with the last four or five digits of an account number can be used to bolster the credibility of a criminal who is making pretext calls to a card holder in order to learn other personal confidential financial information.

> Expiration dates are solicited by criminals in many e-mail phishing scams . . . , are one of the personal confidential financial information items trafficked in by criminals . . . , are described by Visa as a special security feature . . . , [and] are one of the items contained in the magnetic stripe of a credit card, so it is useful to a criminal when creating a phony duplicate card.
>
> . . . .
>
> Identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.

*Redman v. Radioshack Corp.*, 768 F.3d 622, 626-627, 639 (7th Cir. 2014).

8. In sum, Defendants have violated FACTA, and have thereby placed the security of Plaintiffs and similarly situated Class members at risk. As a result of Defendants' unlawful practice of violating FACTA's provisions intended to safeguard against identity theft and credit and debit card fraud, Plaintiffs seek, on behalf of themselves and the Class, statutory damages, punitive damages, costs and attorney fees, all of which are expressly made available by statute, 15 U.S.C. §§ 1681 *et seq.*

## PARTIES

9. Plaintiff Kathleen O'Shea is and at all times relevant hereto was a resident of the State of New York.

10. Plaintiff Sandeep Trisal is and at all times relevant hereto was a resident of the State of New York.

11. Defendant P.C. Richard & Son, LLC (d/b/a P.C. Richard & Son) is a limited liability company organized and existing under the laws of the State of New York. P.C. Richard & Son, LLC (d/b/a P.C. Richard & Son) owns, manages, maintains and/or operates several physical retail store locations within this district, offering various goods and services for sale to

the public.  P.C. Richard & Son, LLC does business individually and collectively with P.C. Richard & Son, Inc., and they collectively use the business name P.C. Richard & Son.

12. Defendant P.C. Richard & Son, Inc. (d/b/a P.C. Richard & Son) is a corporation organized and existing under the laws of the State of Delaware.  P.C. Richard & Son, Inc. (d/b/a P.C. Richard & Son) owns, manages, maintains and/or operates several physical retail store locations within this district, offering various goods and services for sale to the public.  P.C. Richard & Son, Inc. does business individually and collectively with P.C. Richard & Son, LLC, and they collectively use the business name P.C. Richard & Son.

13. At all times mentioned in this First Amended Class Action Complaint, Defendants and each of them were the agents, employees, joint venturer, and/or partners of each other and were acting within the course and scope of such agency, employment, joint venturer and/or partnership relationship, and/or each of the Defendants ratified and or authorized the conduct of each of the other Defendants.

## JURISDICTION AND VENUE

14. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

15. Plaintiffs' claims asserted herein arose in this judicial district and Defendants do business in and reside in this judicial district.

16. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that Defendants have done and continue to do business, and intentionally avail themselves of the markets within this district, they own, manage, maintain and/or operate several physical retail store locations within this district, and this is a class action case in which a substantial part of the

acts and omissions giving rise to the claims occurred within this judicial district, including New York, New York.

### CLASS ACTION ALLEGATIONS

17. Plaintiffs bring this class action on behalf of themselves and all other persons similarly situated pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

18. The Class which Plaintiffs seek to represent is defined as:

All consumers to whom Defendants, after November 17, 2013, provided an electronically printed receipt at the point of a sale or transaction at any of Defendants' physical store locations, on which receipt Defendants printed the expiration date of the consumer's credit card or debit card (the "Class").[1]

19. Excluded from the Class are Defendants and their directors, officers and employees. Also excluded from the Class are any justice, judge, or magistrate judge assigned to this action or who presides over any proceeding concerning this action, and any such justice's, judge's, or magistrate judge's spouse, or a person within the third degree of relationship to any of them, or the spouse of such a person.

20. <u>Numerosity</u> (Fed. R. Civ. P. 23(a)(1)): The Class is so numerous that joinder of all individual members in one action would be impracticable. The disposition of their claims through this Class action will benefit both the parties and this Court.

21. Plaintiffs are informed and believe and thereon allege that there are, at a minimum, thousands (*i.e.*, two thousand or more) of members that comprise the Class.

---

[1] Plaintiffs reserve the right to amend or otherwise modify the Class definition and/or add subclasses.

22.     The exact size of the Class and identities of individual members thereof are ascertainable through Defendants' records, including but not limited to Defendants' sales and transaction records.

23.     Members of the Class may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by other methods suitable to this Class and deemed necessary and or appropriate by the Court.

24.     <u>Typicality</u> (Fed. R. Civ. P. 23(a)(3)): Plaintiffs' claims are typical of the claims of the entire Class. The claims of Plaintiffs and members of the Class are based on the same legal theories and arise from the same unlawful conduct.

25.     Plaintiffs and members of the Class were each customers of Defendants, each having made a purchase or transacted other business with Defendants after November 17, 2013, using a debit card or credit card.  At the point of such sale or transaction with Plaintiffs and members of the Class, Defendants provided to Plaintiffs and each member of the Class a receipt in violation of 15 U.S.C. §1681c(g) (*i.e.*, a receipt on which is printed the expiration date of the debit card or credit card).

26.     <u>Common Questions of Fact and Law</u> (Fed. R. Civ. P. 23(a)(2) and (b)(3)): There are a well-defined community of interest and common questions of fact and law affecting the members of the Class.

27.     The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

(a) Whether Defendants' conduct of providing Plaintiffs and the Class with sales or transaction receipts whereon Defendants printed the expiration date of the card violated the FACTA, 15 U.S.C. §§ 1681 *et seq.*;

(b) Whether Defendants' conduct was willful; and

(c) Whether Plaintiffs and the Class are entitled to statutory damages, punitive damages, costs and or attorney fees for Defendants' acts and conduct.

28. <u>Adequacy of Representation</u> (Fed. R. Civ. P. 23(a)(4)): Each of the Plaintiffs is an adequate representative of the Class because each of their interests do not conflict with the interests of the Class which Plaintiffs seek to represent. Each of the Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the Class and neither has any interests antagonistic to the Class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation.

29. <u>Superiority</u> (Fed. R. Civ. P. 23(b)(1) and 23(b)(3)): A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be and if awarded to the Class are likely to be substantial, the actual damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiffs do not know of any other litigation already commenced by or against any member of the Class concerning Defendants' printing of the expiration date of the card on customer receipts. The likelihood of individual Class members prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court

system resulting from multiple trials of the same factual issues.  In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### COUNT ONE

**For Violation of 15 U.S.C. §§ 1681 *et seq*.**

**(On Behalf of Plaintiffs and the Class as against all Defendants)**

30. Plaintiffs hereby incorporate by reference the allegations contained in this First Amended Class Action Complaint.

31. Plaintiffs assert this claim on behalf of themselves and the Class against Defendants and each of them.

32. Title 15 U.S.C. § 1681c(g)(1) provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

33. By its express terms, 15 U.S.C. § 1681c(g)(1) applies to "any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions" after December 3, 2006. 15 U.S.C. § 1681c(g)(3).

34. Defendants transact business in the United States and accept credit cards and debit cards in the course of transacting business with persons such as Plaintiffs and members of the

Class. In transacting such business, Defendants use cash registers and or other machines or devices that electronically print receipts for credit card and debit card transactions.

35.     After November 17, 2013, Defendants, at the point of a sale or transaction with Plaintiff Kathleen O'Shea, provided Plaintiff Kathleen O'Shea with one or more electronically printed receipts on each of which Defendants printed the expiration date of her debit card and the last four digits of her card number.

36.     After November 17, 2013, Defendants, at the point of a sale or transaction with Plaintiff Sandeep Trisal, provided Plaintiff Sandeep Trisal with one or more electronically printed receipts on each of which Defendants printed the expiration date of his debit card or credit card and the last four digits of his card number.

37.     After November 17, 2013, Defendants, at the point of a sale or transaction with members of the Class, provided each member of the Class with one or more electronically printed receipts on each of which Defendants printed, for each respective Class member, the expiration date of the debit card or credit card and the last four digits of the card number.

38.     As set forth above, FACTA was enacted in 2003 and gave merchants who accept credit and or debit cards up to December 4, 2006 to comply with its requirements.

39.     Defendants and each of them knew of and were well informed about the law, including specifically FACTA's requirements concerning the truncation of credit and debit card numbers and prohibition on the printing of expiration dates.

40.     For example, but without limitation, several years ago, VISA, MasterCard, the PCI Security Standards Council (a consortium founded by VISA, MasterCard, Discover, American Express and JCB), companies that sell cash register and other devices for the processing of credit or debit card payments, companies that sell software to operate payment

card devices, companies that maintain and repair hardware or software used to process payment card transactions, and other entities informed Defendants, and each of them, about FACTA, including its specific requirements concerning the truncation of credit and debit card numbers and prohibition on the printing of expiration dates, and Defendants' need to comply with same.

41. Other entities, including but not limited to Defendants' merchant bank (also known as the acquiring bank or acquirer) which processes credit and debit card payments for transactions occurring at Defendants' stores, likewise informed Defendants and each of them about FACTA, including its specific requirements concerning the truncation of credit and debit card numbers and prohibition on the printing of expiration dates, and Defendants' need to comply with same.

42. In addition, many companies such as VISA and MasterCard devised and implemented policies well before the operative date of FACTA's requirements, wherein such policies VISA, MasterCard and others required Defendants (and informed Defendants of the requirements) to truncate credit and debit card numbers and prevent the printing of expiration dates on receipts. In addition, these companies also publically announced some of these requirements. For example, on March 6, 2003, VISA USA's CEO, Carl Pascarella, held a press conference on Capitol Hill with Senators Dianne Feinstein, Judd Gregg, Jon Corzine and Patrick Leahy, and publically announced Visa USA's new truncation policy to protect consumers from identity theft. At the March 2003 press conference, Mr. Pascarella explained, as follows:

> Today, I am proud to announce an additional measure to combat identity theft and protect consumers. **Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether.** This is an added security measure for consumers that doesn't require any action by the cardholder. We are proud to be the first payments brand to announce such a move

> to protect cardholders' identities by restricting access to their account information on receipts.
>
> **The first phase of this new policy goes into effect July 1, 2003 for all new terminals.** I would like to add, however, that even before this policy goes into effect, **many merchants have already voluntarily begun truncating receipts, thanks to groundwork that we began together several years ago**.
>
> Receipt truncation is good news for consumers, and bad news for identity thieves. Identity thieves thrive on discarded receipts and documents containing consumers' information such as payment account numbers, addresses, Social Security numbers, and more. Visa's new policy will protect consumers by limiting the information these thieves can access.

43. Moreover, the Government, through the Federal Trade Commission ("FTC"), provided notice of FACTA's requirements to businesses on no less than three separate occasions in 2007, reminding them of the requirement to truncate credit and debit card information on receipts. Defendants were informed of and knew about these notices from the FTC. In one such notice, entitled "FTC Business Alert" "Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts," and dated May 2007, the FTC reminded businesses, among other things, of the following:

> What's on the credit and debit card receipts you give your customers? The Federal Trade Commission (FTC), the nation's consumer protection agency, says it's time for companies to check their receipts and make sure they're complying with a law that's been in effect for all businesses since December 1, 2006.
>
> According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten — or truncate — the account information. You may include no more than the last five digits of the card number, and **you must delete the card's expiration date**. For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:
>
> > ACCT:\*\*\*\*\*\*\*\*\*\*\*12345
> > EXP:\*\*\*\*
>
> Why is it important for businesses to make sure they're complying with this law? Credit card numbers on sales receipts are a "golden ticket" for fraudsters and

identity thieves. Savvy businesses appreciate the importance of protecting their customers — and themselves — from credit card crime.

44.     Defendants also knew that their electronic receipt printing equipment (inclusive of software and other codes) were configured and/or otherwise outdated such that they would print and were printing debit card and credit card receipts that displayed the card's expiration date printed on customer receipts in violation of FACTA.  Despite this knowledge, Defendants decided to forego and otherwise avoid the expense, time, and other resources required to properly configure and update their electronic receipt printing equipment (inclusive of software and other codes) such that they would not print information (such as the card expiration date) prohibited by FACTA.  Thus, Defendants' violations of FACTA were not accidental oversights, but were a means of avoiding the additional expense, time, and other resources required to properly configure and otherwise update their electronic receipt printing equipment.

45.     Moreover, although Plaintiff Kathleen O'Shea's counsel served Defendants on or about November 2, 2015 with a letter (together with the then not yet filed Complaint) demanding that Defendants cease and desist their FACTA violations, and this lawsuit was thereafter filed on November 18, 2015 (see Complaint, Document No. 1) and Defendants each executed a Waiver Of The Service Of Summons form on December 9, 2015 (see Document Nos. 7 and 8), Defendants continued to commit FACTA violations until at least August 17, 2016.  Indeed, Plaintiff  Sandeep Trisal received from Defendants a credit/debit card receipt on May 2, 2016 which contained, among other things, Mr. Trisal's card's expiration date and the last four digits of his card number.  Thus, rather than cease and desist FACTA violations after Defendants were served with the November 2, 2015 letter, Defendants violated their customers' FACTA rights at least until August 17, 2016 (approximately 9½ months after they were served with the

November 2, 2015 letter demanding that they cease and desist their FACTA violations). That Defendants were violating FACTA until at least August 17, 2016 was also addressed with the Court and Defendants' counsel during an in-person court hearing in this case on August 18, 2016, and that resulted in the Court permitting Plaintiff Kathleen O'Shea to file an amended complaint in this matter to, among other things, broaden the Class definition to include credit card receipts and to join Mr. Trisal as an additional named Plaintiff.

46. As set forth above, Defendants put their own interests ahead of and instead of their customers' rights under FACTA.

47. Thus, despite knowing and being repeatedly informed about FACTA and the importance of truncating credit and debit card numbers and preventing the printing of expiration dates on receipts, and despite having had over three years to comply with FACTA's requirements, Defendants knowingly willfully, intentionally, and recklessly violated FACTA's requirements by, *inter alia*, printing the expiration date of the card and the last four digits of the card number upon the receipts provided to the debit card and credit card cardholders with whom they transact business.

48. Defendants' business peers and competitors brought their credit and debit card receipt printing processes in compliance with FACTA's requirements by, for example, programming their card machines and devices to prevent them from printing more than the last five digits of the card number and or the expiration date upon the receipts provided to the cardholders. Defendants could have readily done the same.

49. Instead, Defendants knowingly, willfully, intentionally, and recklessly disregarded FACTA's requirements and used cash registers and or other machines or devices that printed receipts in violation of FACTA.

50.     Defendants knowingly, willfully, intentionally, and recklessly violated FACTA in conscious disregard of the rights of Plaintiffs and the Class.

51.     Defendants have also harmed Plaintiffs and the Class by exposing them to at least an increased risk of identity theft and credit and or debit card fraud.

52.     As a result of Defendants' willful violations of FACTA, Defendants are liable to Plaintiffs and each member of the Class in the statutory damage amount of "not less than $100 and not more than $1,000" for each violation. 15 U.S.C. § 1681n.

## PRAYER FOR RELIEF

53.     WHEREFORE, Plaintiffs pray for judgment and relief against Defendants as follows:

A.     An order certifying the Class and appointing Plaintiffs as the representatives of the Class, and appointing counsel of record for Plaintiffs as counsel for the Class;

B.     An award to Plaintiffs and the Class of statutory damages pursuant to 15 U.S.C. § 1681n for Defendants' willful violations (up to but not exceeding the fullest extent allowed under the Constitution of the United States);

C.     An award to Plaintiffs and the Class of punitive damages pursuant to 15 U.S.C. § 1681n (up to but not exceeding the fullest extent allowed under the Constitution of the United States);

D.     Payment of costs of suit herein incurred pursuant to, *inter alia*, 15 U.S.C. § 1681n;

   E. Payment of reasonable attorney's fees pursuant to, *inter alia*, 15 U.S.C. § 1681n; and

   F. For such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

       Respectfully submitted,

Date: September 24, 2016

       */s/ Chant Yedalian*
       Chant Yedalian (*pro hac vice*)
       CHANT & COMPANY
       A Professional Law Corporation
       1010 N. Central Ave.
       Glendale, CA 91202
       Telephone: 877.574.7100
       Facsimile: 877.574.9411
       chant@chant.mobi

       Charles J. LaDuca (3975927)
       Benjamin David Elga (5332861)
       CUNEO GILBERT & LADUCA, LLP
       16 Court Street, Suite 1012
       Brooklyn, New York 11241
       Telephone: 202.789.3960
       Facsimile: 202.789.1813
       charles@cuneolaw.com
       belga@cuneolaw.com