# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| KATHLEEN O'SHEA and SANDEEP TRISAL on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> P.C. RICHARD & SON, LLC (d/b/a P.C. Richard & Son) and P.C. RICHARD & SON, INC. (d/b/a P.C. Richard & Son), <br><br> Defendants. | Case No. 2:15-cv-09069-KPF |

## OPPOSITION TO MOTION TO DISMISS

## PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION……………………………………………………………...1

II.     THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT……………………...3

      A.      FACTA's Enactment And The Information It Restricts…………………………..3

      B.      Congress Gave Businesses Up To Three Years To Comply
            With FACTA's Requirements……………………………………………………..4

      C.      FACTA's Statutory Damages Remedy……………………………………………4

      D.      FACTA's Statutory Damages Serve Compensatory And Deterrent Purposes…….4

      E.      "Willful" Includes Reckless Violations Of FACTA………………………………6

      F.      The 2008 Amendment To FACTA…………………………………………………6

III.    PLAINTIFFS' COMPLAINT ESTABLISHES ARTICLE III STANDING……………...7

      A.      *Spokeo* Did Not Break New Ground And It Involved Procedural Rights………...7

      B.      Spokeo Is Distinguishable From Plaintiffs' Case Because *Spokeo* Involves
            Procedural Rights While Plaintiffs' FACTA Claim Involves Federal
            Substantive Rights………………………………………………………………...7

      C.      Plaintiffs' FAC Sufficiently Alleges Injury-In-Fact……………………………...10

            1.      Plaintiffs' harm is particularized and concrete…………………………...10

                  (a)     Many courts have found that a merchant's failure
                        to follow FACTA's truncation provisions is *per se*
                        a concrete injury………………………………………………………10

                  (b)     FACTA seeks to protect rights traditionally found in the
                        common law and the Court should also defer to Congress'
                        policy decisions………………………………………………………13

IV.    PLAINTIFFS' FAC ADEQUATELY PLEADS WILLFULNESS……………………...18

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**                                                                                    **Page(s)**

*Aeschbacher v. Cal. Pizza Kitchen*
 2007 WL 1500853 (C.D. Cal. 2007)…………………………………………………………..13

*Altman v. White House Black Market, Inc.*
 No. 1:15-cv-2451-SCJ,
 2016 WL 3946780 (N.D. Ga. July 13, 2016)…...……………………………………11, 25

*Am States Ins. Co. v. Capital Assocs. of Jackson County, Inc.*
 392 F.3d 939 (7th Cir. 2004)………………………………………………………………..17

*Arcilla v. Adidas Promotional Retail Ops.*
 488 F.Supp.2d 965 (C.D. Cal. 2007)…………………………………………………………13

*Ashcroft v. Iqbal*
 556 U.S. 662 (2009)………………………………………………………………...………19

*Bankshares Corp. v. St. Paul Mercury Ins. Co.*
 407 F.3d 631 (4th Cir. 2005)………………………………………………………………..17

*Bateman v. American Multi-Cinema, Inc.*
 623 F.3d 708 (9th Cir. 2010)…….....................................................................3, 4, 5, 6, 18

*Bell Atlantic Corp. v. Twombly*
 550 U.S. 544 (2007)………………………………………………………………..18, 22, 23

*Blanco v. El Pollo Loco, Inc.*
 2007 WL 1113997 (C.D. Cal.)……………………………………………………………...13

*Braitberg v. Charter Communications, Inc.*
 836 F.3d 925 (8th Cir. 2016)………………………………………………………………..12

*Buechler v. Keyco, Inc.*
 No. WDQ–09–2948, 2010 WL 1664226 (D. Md. April 22, 2010)……………..………22

*Carey v. Piphus*
 435 U.S. 247 (1978)………………………………………………………………...………15

*Church v. Accretive Health, Inc.*
 No. 15-15708, 2016 WL 3611543 *2 (11th Cir. July 6, 2016)……………...…………….9

- ii -

**Page(s)**

*Conley v. Gibson*
 355 U.S. 41 (1957)……………………………………………………………...18, 19

*Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*
 655 F.Supp.2d 1316 (S.D. Fla. 2009)……………………………………………..10, 16

*Crupar-Weinmann v. Paris Baguette Am., Inc.*
 No. 13 Civ 7013, 2014 WL 2990110 (S.D.N.Y. June 30, 2014)…...........................24-25

*Cruper-Weinmann v. Paris Baguette America, Inc.*
 --- Fed.Appx. ---, 2016 WL 3553448 (2nd Cir. June 30, 2016)………………………….25

*De Cesare v. Laboratory Corporation of American Holdings*
 No. SA-CV-16-0006-DOC-KES,
 2016 WL 3483205 (C.D. Cal. May 31, 2016)………………..…………………….21-22

*Dover v. Shoe Show, Inc.*
 No. 12-694, 2013 U.S. Dist. LEXIS 59418 (W.D. Pa. Mar. 19, 2013)……....................22

*Edwards v. Toys "R" Us*
 527 F.Supp.2d 1197 (C.D. Cal. 2007)……………….....……..…………….6, 12, 13, 24

*Erickson v. Pardus*
 551 U.S. 89 (2007)……………………………………………………………...18-19

*Follman v. Hospitality Plus of Carpentersville, Inc.*
 532 F.Supp.2d 960 (N.D. Ill. 2007)………………………………………...……22

*Follman v. Village Squire, Inc.*
 542 F.Supp.2d 816 (N.D. Ill. Dec. 18, 2007)………………………………………….22

*Fullwood v. Wolfgang's Steakhouse, Inc.*
 No. 13 Civ 7174 KPF, 2015 WL 4486311 (S.D.N.Y. July 23, 2015)…………………..25

*Guarisma v. Microsoft Corp.*
 No. 1:15-cv-24326-CMA, --- F.Supp.3d ---,
 2016 WL 4017196 (S.D. Fla. July 26, 2016)………………..………………………11

*Harris v. Wal-Mart Stores, Inc.*
 No. 07 CV 2561, 2007 WL 3046162 (N.D. Ill. Oct. 10, 2007)…………….....................22

*Havens Realty Corp. v. Coleman*
 455 U.S. 363, 373 (1982)…………………………………………………8, 9, 11, 12

**Page(s)**

*Hernandez v. Coughlin*
  18 F.3d 133 (2ⁿᵈ Cir. 1994)……………………………………………………….19

*Hooters of Augusta, Inc. v. Am Global Ins. Co.*
  157 Fed. Appx. 201 (11ᵗʰ Cir. 2005)……………………………………………16-17

*In re The TJX Companies, Inc.*
   MDL No. 1853, 2008 WL 2020375 (D. Kan. May 9, 2008)……………………………22

*In re Toys "R" Us FACTA Litig.*
  2010 WL 5071073 (C. D. Cal. Aug. 17 2010)…………………………………………12-13

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions
Act (FACTA) Litig.*
  300 F.R.D. 347 (C.D. Cal. 2013)………………………………………………………...13

*Iosello v. Leiblys, Inc.*
  502 F.Supp.2d 782 (N.D. Ill. 2007)……………………………………………………...22

*Katz v. Donna Karan Intern., Inc.*
  No. 14-Civ.-740-PAC, 2015 WL 405506 (S.D.N.Y. Jan. 29, 2015)……………………25

*Lavery v. Radioshack Corp.*
  No. 13-cv-05818, 2014 U.S. Dist. LEXIS 85190 (N.D. Ill. June 23, 2014)......................22

*Long v. Tommy Hilfiger U.S.A., Inc.*
  671 F.3d 375 (3ʳᵈ Cir. 2012)……………………………………………………………..6

*Lopez v. Gymboree Corp.*
  2007 WL 1690886 (N.D. Cal. 2007)……………………………………………………13

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992)……………………………………………………………………...14

*Massachusetts v. EPA*
  549 U.S. 497 (2007)…………………………………………………………………14, 18

*Mey v. Got Warranty, Inc.*
  2016 U.S. Dist. LEXIS 84972 (N.D. West Virginia June 30, 2016)……………...16, 17

*Murray v. GMAC Mort. Corp.*
  434 F.3d 948 (7ᵗʰ Cir. 2006)……………………………………………………………5

**Page(s)**

*Noble v. Nevada Checker CAB Corp.*
2016 WL 4432685 (D. Nev. Aug. 19, 2016)…………………………………………12-13

*Parks v. IRS*
618 F.2d 677 (10th Cir. 1980)……………………………………………...…………16

*Pichler v. UNITE*
542 F.3d 380 (3rd Cir. 2008)………………………………………………………..16

*Pirian v. In-N-Out Burgers*
SACV-06-1251 DOC-MLGx,
2007 WL 1040864 (C.D. Cal. 2007)…………………………………...……13, 18, 19, 20, 21

*Pollard v. Lyon*
91 U.S. 225 (1876)…………………………………………………………………15

*Ramirez v. MGM Mirage, Inc.*
524 F.Supp.2d 1226 (D. Nev. 2007)……………………………………………13, 22

*Redman v.  Radioshack Corp.*
768 F.3d 622 (7th Cir. 2014)……………………..……………...……………………2, 6, 23, 24

*Safeco Ins. Co. of America v. Burr*
551 U.S. 47 (2007)…………………………………………..…..……………6, 12, 18

*Sanders v. W & W Wholesale Inc.*
No. 11 C 3557, 2011 WL 4840978 (N.D. Ill. Oct. 11, 2011)……………………………22

*Seig v. Yardhouse Rancho Cucamonga, LLC*
CV07-2105 PA (MANx) (C.D. Cal. 2007)…………………………………………13

*Soualian v. International Coffee and Tea LLC*
2007 WL 4877903 (C.D. Cal. 2007)……………………………………………...13

*Spokeo, Inc. v. Robins*
136 S.Ct. 1540 (May 16, 2016)………………………..…………..3, 7, 8, 9, 10, 11, 14, 16

*Steel Co. v. Citizens for a Better Env't*
523 U.S. 83 (1998)…………………………………………………………………14

*Steinberg v. Stitch & Craft, Inc.*
No. 09-60660, 2009 U.S. Dist. LEXIS 72908 (S.D. Fla. Aug. 18, 2009)……………....21

**Page(s)**

*Summers v. Earth Island Institute*
   555 U.S. 488 (2009)……………………………………………………………………7

*Tchoboian v. Fedex Office & Print Services, Inc.*
   2011 WL 12842228 (C.D. Cal. Jan. 28, 2011)………………………………………..13

*Tchoboian v. Fedex Office & Print Services, Inc.*
   2011 WL 12842230 (C.D. Cal. Nov. 14, 2011)………………………………………13

*Thomas v. Brett Sports & Entm't, Inc.*
   ED-CV-16-00480-AB-DTB,
   2016 U.S. Dist. LEXIS 112280 (C.D. Cal. August 23, 2016)…………………….…...11

*Thompson v. Rally House of Kansas City Inc.*
   No. 4:15-cv-00886 (W.D. Mo. Oct. 6, 2016)…………………………………………12

*Troy v. Home Run Inn, Inc.*
   No. 07 C 4331, 2008 WL 1766526 (N.D. Ill. April 14, 2008)………………………...22

*Turner Broad. Sys., Inc. v. F.C.C.*
   512 U.S. 622 (1994)……………………………………………………………………...17

*Whittemore v. Cutter*
   29 F. Cas. 1120 (C.C.D. Mass. 1813) (Story, J.)……………………………………...15

*Wilcox v. Plummer's Ex'rs*
   29 U.S. 172 (1830)……………………………………………………………………15

*Wood v. J Choo USA, Inc.*
   No. 9:15-cv-81487-BB, --- F.Supp.3d ---,
   2016 WL 4249953 (S.D. Fla. August 10, 2016)………………….......................…10-11

## U.S. Constitution

United States Constitution, Article III…………………………...………7, 8, 9, 10, 14, 15, 17, 18

United States Constitution, Article VI. Clause 2……………………………………………...24

## Federal Statutes

15 U.S.C. § 1681 *et seq.*, Fair Credit Reporting Act ("FCRA")…………………….3, 4, 5, 6, 7, 19

**Page(s)**

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")……………………………………………...*passim*

15 U.S.C. § 1681n……………………………………………….........................4, 6, 24

## Federal Rules

Fed. R. Civ. Pro. 8……………………………………………….…..........18, 19

Fed. R. Civ. Pro. 9.…………………......…………………...……………….....…18, 19, 22

Fed. R. Civ. Pro. 12(b)(1).………………….…….…………………………….....3, 7

Fed. R. Civ. Pro. 12(b)(6).………………….…..…………...………….2, 3, 19, 25

## Other Authorities

62 Am. Jur. 2d Privacy § 45……………………………………………………...16

Antonin Scalia, The Doctrine of Standing as an Essential Element
of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 885 (1983)………………………..14-15

1 Dan B. Dobbs, Law of Remedies: Damages - Equity - Restitution § 1.1 at 5 (2d ed. 1993)….15

1 George E. Palmer, The Law of Restitution § 2.1 (1978)………………………………………15

H.R. Rep. No. 108-263 (2003)………………………………………………...3, 18

1 Restatement (First) of Torts § 1 cmt. e, at 4………………………………………...17

Samuel D. Warren & Louis D. Brandeis, The Right to Privacy,
4 Harv. L. Rev. 193, 193 (1890)…………………………………………………17

S. Rep. No. 108-166 (2003)………………………………………………….3, 4

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Plaintiff Kathleen O'Shea is a customer of Defendants P.C. Richard & Son, LLC and P.C. Richard & Son, Inc.[1]   After she made a purchase from Defendants with her debit card, Defendants provided her with a customer receipt whereon they exposed her debit card's expiration date in violation of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g)(1).  FAC at ¶¶ 25 and 35.

On or about November 2, 2015, Ms. O'Shea's counsel served Defendants with a letter (together with the then not yet filed Complaint) demanding that Defendants cease and desist their FACTA violations.  FAC at ¶ 4.

The Complaint against the Defendants for FACTA violations was later filed on November 18, 2015 (Dkt. No. 1) and Defendants each executed a Waiver Of The Service Of Summons form on December 9, 2015 (Dkt. Nos. 7 and 8).  FAC at ¶ 4.

The FAC further pleads that despite being in the midst of a lawsuit charging Defendants with FACTA violations:

> "Defendants continued to commit FACTA violations until at least August 17, 2016.  Indeed, Plaintiff  Sandeep Trisal received from Defendants a credit/debit card receipt on May 2, 2016 which contained, among other things, Mr. Trisal's card's expiration date and the last four digits of his card number.  Thus, rather than cease and desist FACTA violations after Defendants were served with the November 2, 2015 letter, Defendants violated their customers' FACTA rights at least until August 17, 2016 (approximately 9½ months after they were served with the November 2, 2015 letter demanding that they cease and desist their FACTA violations).  That Defendants were violating FACTA until at least August 17, 2016 was also addressed with the Court and Defendants' counsel during an in-person court hearing in this case on August 18, 2016, and that resulted in the Court permitting Plaintiff Kathleen O'Shea to file an amended complaint in this matter to, among other things, broaden the Class definition to include credit card receipts and to join Mr. Trisal as an

---

[1] First Amended Class Action Complaint ("FAC"), Dkt. No. 33 at ¶ 25.

additional named Plaintiff.  These facts further underscore that Defendants' conduct was willful."  FAC at ¶ 4.

Given these facts, there cannot be any serious debate that the FAC pleads Defendants' knowledge of FACTA and "willful" conduct (which includes among other things reckless conduct).  Indeed, as the Seventh Circuit has pointed out, in such circumstances, a company has to know there is a risk of error where the identical risk had materialized previously (such as here because Defendants were already facing a FACTA lawsuit) and knowing the risk and failing to take any precaution against it—even if adequate precaution may not cost anything—are "indicative of willful violation" and that the "violation probably was willful."  *Redman v. Radio Shack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014).  Of course, for purposes of a motion to dismiss, the only thing that must be pled is a plausible allegation of willfulness.  Yet, as the Seventh Circuit has pointed out, circumstances such as those here where a defendant has already been sued for FACTA violations, push the needle far past plausibility and reach probability.

Indeed, when Defendants' counsel were asked by the Court at the pre-motion conference if they would still file a 12(b)(6) motion on the issue of willfulness given these facts, Defendants' counsel stated that the facts "postdate when there would be no question that [Defendants] had notice" and indicated that a willfulness motion is not one they would pursue:

> **THE COURT:** Why don't we put that to the side.  Let's imagine, sir, you and I are going to see an amended complaint that has some of that information in it.  Do you want to perhaps either modify or present as they are right now your standing argument and your willfulness arguments?
>
> **MR. COLL:** I don't think the standing argument changes.
>
> **THE COURT:** I didn't think so either.  I am not sure if it's going to succeed.  I know it doesn't change from what he just said.
>
> **MR. COLL:** That has no bearing on it.  On the other hand, my willfulness argument.  I have read your decision in the Fullwood case. ***He now tells me of facts***

- 2 -

*that postdate when there would be* <u>*no question that we had notice.*</u>  I suspect that that is not one that I would pursue.  I want to read your decision again. I want to see some allegations as to exactly what they are claiming.  ***But I would think I'm talking about essentially Spokeo motion and not a willfulness motion.***"   Exhibit 1: Transcript of August 18, 2016 hearing at pp. 12:17 – 13:10 (emphasis added).

Defendants' 12(b)(6) motion is not a serious motion as shown by Defendants' counsel's own comments.  Yet, following the pre-motion conference of counsel, and despite Defendants' counsel's remarks, Defendants filed the 12(b)(6) motion anyway.  For all of the reasons stated above and based upon the various other matters pled in the FAC, it defies credulity for Defendants to claim that Plaintiffs cannot meet the plausibility requirement.  Defendants' 12(b)(6) motion must be denied.

Likewise, Defendants' 12(b)(1) motion to dismiss for the purported lack of subject matter jurisdiction must also be denied because, as explained below, this Court has federal subject-matter jurisdiction over Plaintiffs' federal FACTA claims.

## II.     THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT

### A.     FACTA's Enactment And The Information It Restricts

Information is the *sine qua non* of identity theft and credit/debit card fraud, and every piece of information increases an identify thief's chances of success.  "In an effort to combat identity theft, in 2003, Congress enacted FACTA, which amended the [Fair Credit Reporting Act]."  *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 717 (9th Cir. 2010). "In fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'"  *Bateman*, 623 F.3d at 718 (quoting 149 Cong. Rec. 26,891 (2003) (statement of Sen. Shelby)).  Indeed, Congress found that identity theft had "reached almost epidemic proportions in recent years."  H.R. Rep. No. 108-263, at 25 (2003).

To "protect consumer from identity thieves" and "limit the number of opportunities for

- 3 -

identity thieves to 'pick off key card account information,'" (S. Rep. No. 108-166, at 3 (2003), Congress passed FACTA, which states, in pertinent part, "*no person that accepts credit cards or debit cards for the transaction of business shall print* more than the last 5 digits of the card number or the *expiration date upon any receipt provided to the cardholder at the point of the sale or transaction*."  15 U.S.C. § 1681c(g)(1) (emphasis added).

**B.    Congress Gave Businesses Up To Three Years To Comply With FACTA's Requirements**

To ensure compliance, Congress gave businesses up to three years to make modifications to their registers and other equipment.  15 U.S.C. § 1681c(g)(3).  As the Senate Committee's Conference Report explained, "The phase in periods are designed to give merchants a reasonable opportunity to come into compliance with this section."  S. Rep. 108-166, 2003 WL 22399643 *12 (Oct. 17, 2003).[2]

**C.    FACTA's Statutory Damages Remedy**

"FACTA and other provisions of the FCRA share the same statutory damages provision." *Bateman*, 623 F.3d at 715 (citing 15 U.S.C. § 1681n).  If a violation of FACTA is shown to be "willful," as that term is used in 15 U.S.C. § 1681n, then consumers may recover either actual damages, if any, or statutory damages between $100 and $1,000 *without having to prove actual damages*.  *Bateman*, 623 F.3d at 711 (citing 15 U.S.C. § 1681n (emphasis added)).

**D.    FACTA's Statutory Damages Serve Compensatory And Deterrent Purposes**

FACTA's statutory damages serve both compensatory and deterrent purposes:

---

[2] The Conference Report from the Senate Committee on Banking, Housing and Urban Affairs states, "To comply with this mandate, some merchants would have to make modifications to their systems, including software reprogramming, formatting changes to dial-up terminals, and purchase of new printing devices."  S. Rep. 108-166, 2003 WL 22399643 *27 (Oct. 17, 2003).

"The need for statutory damages to compensate victims is plain. The actual harm that a willful violation of FACTA will inflict on a consumer will often be small or difficult to prove.  As the Seventh Circuit similarly noted in *Murray*, under the FCRA 'individual losses, if any, are likely to be small—a modest concern about privacy, a slight chance that information would leak out and lead to identity theft. That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages *without proof of injury.*'" *Bateman*, 623 F.3d at 718 (quoting *Murray v. GMAC Mort. Corp*., 434 F.3d 948, 953 (7th Cir. 2006).

The court further stated:

"In addition to that compensatory function, FACTA's actual and statutory damages provisions also effectuate the Act's deterrent purpose…. ***In fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'*** 149 Cong. Rec. 26,891 (2003) (statement of Sen. Shelby). ***Allowing consumers to recover statutory damages furthers this purpose*** by deterring businesses from willfully making consumer financial data available, ***<u>even where no actual harm results</u>***."  *Bateman*, 623 F.3d at 718 (emphasis added).

The Seventh Circuit likewise explained the importance of Congress' prohibition against

disclosing debit and credit card expiration dates in combating card fraud:

"The idea behind requiring [an expiration date's] deletion is that, should the cardholder happen to lose the receipt of a transaction, the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information and thus be able to make purchases that the seller will think were made by the legitimate cardholder.

A typical credit card has 16 digits and an expiration date that is the last day of a designated month and year.  Even if the identity thief has all 16 digits, without the expiration date he may be unable to use the card. . . .  It's common in telephone and internet transactions for the consumer to be asked for an expiration date, and most systems will not allow the would-be customer to keep guessing at the date, as the guessing suggests that he may be an identity thief.

Additional reasons for requiring deletion of the expiration date include that expiration dates combined with the last four or five digits of an account number can be used to bolster the credibility of a criminal who is making pretext calls to a card holder in order to learn other personal confidential financial information. Expiration dates are solicited by criminals in many e-mail phishing scams . . . , are one of the personal confidential financial information items

- 5 -

trafficked in by criminals . . . , are described by Visa as a special security feature . . . , [and] are one of the items contained in the magnetic stripe of a credit card, so it is useful to a criminal when creating a phony duplicate card.

. . . .

Identity theft is a serious problem, and FACTA is a serious congressional effort to combat it." *Redman v. Radioshack Corp.*, 768 F.3d 622, 626-627, 639 (7th Cir. 2014).

### E.    "Willful" Includes *Reckless* Violations Of FACTA

The Ninth Circuit and the U.S. Supreme Court have held, "A 'willful' violation under the FCRA [15 U.S.C. § 1681n] includes 'not only knowing violations of a standard, but reckless ones as well.'" *Bateman*, 623 F.3d at 711 at n1; *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 (2007).[3]

### F.    The 2008 Amendment To FACTA

In 2008, Congress amended FACTA through the Credit and Debit Card Receipt Clarification Act ("Clarification Act").   The Clarification Act granted a *temporary* immunity from statutory damages to those merchants that printed an expiration date "between December 4, 2004, and June 3, 2008 [the date the Clarification Act was enacted]." *Bateman*, 623 F.3d at 717.

"Despite having the occasion [through the Clarification Act] to specifically consider the issue of expiration dates, Congress did not change the actual language of § 1681c(g)(1) or otherwise alter the liability standard of the statute.  Just as before, the statutory language stated that 'no person... shall print ... the expiration date' on a receipt." *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 375 (3rd Cir. 2012). [4]

---

[3] For example, "A reasonable jury, however, could conclude that [defendant] recklessly failed to train its quality assurance personnel on the requirements of FACTA…." *Edwards v. Toys "R" Us*, 527 F.Supp.2d 1197, 1214-1215 and n. 54 (C.D. Cal. 2007).  As another example, "[A] reasonable jury could conclude that the fact that [defendant] did not discover the [FACTA] violation until suit was filed indicates that its monitoring processes (or lack thereof) created an 'unjustifiable risk' that it would violate the statute." *Ibid.*

[4] Instead, the Clarification Act amended the FCRA's remedy provisions contained in 15 U.S.C. § 1681n by adding a new subsection (d) to provide the temporary immunity from statutory damages.

III.     **PLAINTIFFS' COMPLAINT ESTABLISHES ARTICLE III STANDING**

Plaintiffs' FAC establishes Article III standing.

A.     ***Spokeo* Did Not Break New Ground And It Involved Procedural Rights**

Defendants' Rule 12(b)(1) argument relies heavily on the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016).   *Spokeo* is no panacea for Defendants; it is not even a new proclamation of law.   For example, seven years prior to *Spokeo* the Court stated, "[T]he requirement of injury in fact is a hard floor of Article III standing jurisdiction that cannot be removed by statute." *Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009). In fact, the Court in *Spokeo*, quoted *Summers* in stating that a "bare procedural violation, divorced from any concrete harm," does not confer standing. *Spokeo*, 136 S.Ct. at 1549 (quoting *Summers*, 555 U.S. at 496).   Simply put, *Spokeo* has not heightened or lessened the standard for Article III standing.

B.     ***Spokeo* Is Distinguishable From Plaintiffs' Case Because *Spokeo* Involves Procedural Rights While Plaintiffs' FACTA Claim Involves Federal Substantive Rights**

In *Spokeo*, the plaintiff filed a Fair Credit Reporting Act ("FCRA") claim against the defendant based on the defendant's alleged failure to maintain correct information about the plaintiff.  *Spokeo*, 136 S.Ct. at 1546.  The district court dismissed the plaintiff's complaint for lack of Article III standing.  *Id.* at 1544.  On appeal, the Ninth Circuit Court of Appeals reversed the district court's opinion finding no lack of standing.  *Spokeo*, at 1544-1545.  The Supreme Court granted certiorari.  The Court reiterated that an Article III injury-in-fact must be "concrete *and* particularized."  *Id.* at 1545 (emphasis in original) (citation omitted).  The Court found that while the Ninth Circuit had analyzed particularity, it had not examined concreteness.  *Ibid.*  The Court *did not* find that the plaintiff lacked Article III standing.  Rather, the Court vacated and remanded for further consideration:

- 7 -

"Because the Ninth Circuit failed to fully appreciate the distinction between concreteness and particularization, its standing analysis was incomplete.  It did not address the question framed by our discussion, namely, whether the particular *procedural violations* alleged in this case entail a degree of risk sufficient to meet the concreteness requirement.  We take no position as to whether the Ninth Circuit's ultimate conclusion—that Robins adequately alleged an injury in fact— was correct.  *Spokeo,* 136 S.Ct. at 1550 (emphasis added).

In remanding to the Ninth Circuit to determine if the particular procedural violations establish Article III standing, the Court acknowledged that sometimes procedural violations are sufficient to confer standing and sometimes they are not.  *Spokeo,* 136 S.Ct. at 1549.

Thus, even if this were a case involving a procedural violation (which it is not), *Spokeo* explained that "both history and the judgment of Congress play important roles" in determining whether it is a type of procedural violation that confers standing.

As explained in part III.C.1.(b), below, even if FACTA were considered a procedural right, because FACTA is analogous to rights traditionally found in the common law and because the Court should defer to Congress' policy in enacting FACTA, it would be the type of procedural right that confers Article III standing.

"Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact.  In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."  *Spokeo,* 136 S.Ct. at 1549 (emphasis in original).

However, unlike *Spokeo*, in the present case, Plaintiffs' FAC does not allege mere "procedural violations."   To the contrary, Plaintiffs have properly alleged that Defendants violated Plaintiffs' *substantive* federal rights. As the Supreme Court has held, the violation of a federal substantive right is sufficient in and of itself to confer Article III standing: "A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374 (1982).

- 8 -

Indeed, in *Spokeo*, Justice Thomas wrote a separate concurring opinion to explain how standing applies differently with private or substantive rights, as opposed to public procedural rights. Justice Thomas' concurring opinion was declarative of existing Supreme Court case law and he cited and quoted the Supreme Court's *Havens* opinion to explain the principle that the violation of federal substantive right confers standing. *Spokeo*, 136 S.Ct. at 1553.

Similarly, the Eleventh Circuit likewise explained that *Spokeo* did not change standing principles with respect to federal substantive rights. As the Eleventh Circuit explained, standing law concerning substantive rights was already established by the Supreme Court in *Havens*:

> "An injury-in-fact, as required by Article III, 'may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing ....' *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).
> …
> In *Spokeo*, the Court stated that a Plaintiff 'cannot satisfy the demands of Article III by alleging ***a bare procedural violation***.' *Spokeo*, 136 S. Ct. at 1550. ***This statement is inapplicable to the allegations at hand***, because ***Church has not alleged a procedural violation. Rather, Congress provided Church with a substantive right to receive certain disclosures and Church has alleged that Accretive Health violated that substantive right.***" *Church v. Accretive Health, Inc.*, 2016 WL 3611543 *3 and n.2 (11th Cir. July 6, 2016) (emphasis added).

Applying this distinction because a federal substantive law was involved, the Eleventh Circuit held that where a Plaintiff alleged that she did not receive disclosures from a debt collector that were required by the Fair Debt Collections Practices Act ("FDCPA"), she "sufficiently alleged that she suffered a concrete injury" despite the fact that she "does not allege that she suffered actual damages from [Defendant's] failure to include the allegedly required disclosures." *Church*, 2016 WL 3611543 *1 and *3. The alleged violation of a federal substantive right was itself sufficient to establish a "concrete injury" and therefore satisfied the Article III standing requirement.

While the distinction between procedural and substantive rights is important and the

standing analysis differs as to each, even if FACTA were considered a procedural statute, the above cases as well as the cases discussed below show that Plaintiff's FAC does establish Article III standing.

### C.     Plaintiffs' FAC Sufficiently Alleges Injury-In-Fact

FACTA's pertinent language could not be clearer. "[N]o person that accepts credit cards or debit cards for the transaction of business shall print … the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). Congress passed FACTA "to protect the secrecy, and, thus, the privacy of cardholders' complete payment card account numbers and information." *Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F.Supp.2d 1316, 1333-1334 (S.D. Fla. 2009).

### 1.     Plaintiffs' harm is particularized and concrete

Against this backdrop, Defendants argue that Plaintiffs *merely* allege that they received a receipt that revealed their expiration date.  But, printing the card's expiration date is exactly the conduct FACTA made unlawful.  And the injury that flows from this unlawful conduct is particularized and concrete.

"For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Spokeo*, at 1548.  Plaintiffs allege that Defendants' printing of their respective expiration date has harmed them personally, and Defendants do not seriously argue otherwise. Rather, Defendants' standing argument centers on whether Plaintiffs' injury is concrete.

### (a)     Many courts have found that a merchant's failure to follow FACTA's truncation provisions is *per se* a concrete injury

Post-*Spokeo*, most courts addressing Article III standing in FACTA or similar cases have found that violations of federally created rights are concrete injuries.  In *Wood v. J Choo USA,*

- 10 -

*Inc.*, --- F.Supp.3d ---, 2016 WL 4249953 * 5 (S.D. Fla. Aug. 10, 2016) the plaintiff alleged that the defendant, despite having knowledge of FACTA's truncation requirements, presented to the plaintiff a receipt showing the card's expiration date.  The court concluded, "These allegations *by themselves* demonstrate an injury in fact."  *Id.* at *6 (emphasis added). The court held that defendant's arguments "are rejected as irreconcilable with applicable pre- and post-*Spokeo* case law doctrine and legislative intent," that "Congress created a substantive legal right for Wood and other card-holding consumers similarly situated to receive receipts truncating their personal credit card numbers and expiration dates and, thus, protecting their personal financial information," and "Because Wood suffered a concrete harm as soon as Jimmy Choo printed the offending receipt, the Complaint alleges an injury in fact sufficient to confer standing."  *Id.* at *6.

Other courts have likewise found that FACTA provides a federal substantive right which is violated and "concrete" when the offending receipt is printed.  *Guarisma v. Microsoft Corp.*, --- F.Supp.3d ---, 2016 WL 4017196 *4 (S.D. Fla. July 26, 2016) ("Courts have also considered a FACTA violation to be concrete as soon as a company prints the offending receipt, as opposed to requiring a plaintiff actually suffer identity theft"); *Altman v. White House Black Market, Inc.*, 2016 WL 3946780 (N.D. Ga. July 13, 2016) (finding Congress, in enacting the FACTA, created a substantive right to receive a truncated credit card receipt, the invasion of which constitutes a concrete injury).[5]

These opinions are entirely consistent with the Supreme Court's ruling in *Havens*, which held, "A plaintiff seeking to vindicate a statutorily created private right need not allege actual

---

[5] Yet another FACTA case denied a motion to strike class allegations with the court explaining that "the Court is satisfied that Plaintiff has pled jurisdiction sufficiently to survive the pleading stage."  *Thomas v. Brett Sports & Entm't, Inc.*, ED-CV-16-00480-AB-DTB, 2016 U.S. Dist. LEXIS 112280 * 7 (C.D. Cal. Aug. 23, 2016).

harm beyond the invasion of that private right." *Havens*, 455 U.S. at 373-374 (1982).

Unlike FACTA which provides an *absolute* prohibition on the disclosure of certain cardholder information, in *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925, 930-931 (8th Cir. 2016) the cable operator lawfully possessed information and it was alleged that it held it longer than necessary.  The court found that the allegation of delayed retention of information (that the cable operator had lawfully acquired) was procedural.  *Ibid.*  Apparently feeling strained by *Braitberg* (which is not a FACTA case), the court in *Thompson v. Rally House of Kansas City Inc.*, No. 4:15-cv-00886 (W.D. Mo. Oct. 6, 2016) decided it would not follow other FACTA cases which held that standing is satisfied.  The *Thompson* court's view is irreconcilable with and contrary to the Supreme Court's *Havens* opinion.

Defendants also rely on *Noble v. Nevada Checker CAB Corp.*, 2016 WL 4432685 (D. Nev. Aug. 19, 2016), which is currently on appeal to the Ninth Circuit.  *Noble* is inapposite because, unlike this case, it did not involve the printing of the expiration date on receipts.  *Noble* instead involved the printing of the first digit and last four digits of the card number and that court stated that it believed the statute was ambiguous as to whether it prohibits the printing of certain digits of the card number.  In reaching this conclusion, the court relied solely on the Hon. Judge Morrow's August 17, 2010 opinion in *In Re Toys "R" Us*, which arose in the context of a motion for class certification, not a motion to dismiss. *In re Toys "R" Us FACTA Litig.*, 2010 WL 5071073 *1.  Second, and more important, three years earlier, Judge Morrow, in the same litigation, denied a summary judgment motion and ruled:

> "This case presents a different situation than *Safeco* because § 1681c(g) is not ambiguous or susceptible of conflicting interpretations. Courts have consistently held that § 1681c(g)'s 'plain language makes it clear that the statute prohibits both the printing of more than the last five digits of the card number and the expiration date.'" *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1209 (C.D. Cal. 2007) (compiling

cases).

Thus, the court in *Noble* ignored or disregarded a veritable mountain of case law.  Indeed, Judge Pro, who also until recently presided in the District of Nevada, wrote in an opinion pre-dating *Noble*, "Courts uniformly have rejected Defendant's argument on this point, and *all courts reviewing the statute have found it unambiguous*."   *Ramirez v. MGM Mirage, Inc.*, 524 F.Supp.2d 1226, 1234 (D. Nev. 2007) (emphasis added).  Every court in the Ninth Circuit, in which the court in *Noble* sits, that has considered whether FACTA's Section 1681c(g)(1) is ambiguous has found that it is not.[6]

Interestingly, on January 11, 2013, Judge Morrow reversed her August 17, 2010 opinion – the opinion that the *Noble* court relied on – and certified classes of consumers who had been given receipts that "displayed more than the last five digits of the purchaser's credit card or debit card number."   *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 378 (C.D. Cal. 2013).  Therefore, the court in *Noble* relied on a district court opinion that (1) did not address FACTA ambiguity and (2) was not even controlling in the case.

> **(b)**     **FACTA seeks to protect rights traditionally found in the common law and the Court should also defer to Congress' policy decisions**

Tangible injuries such as personal or economic injury may be easier to recognize, but

---

[6] *Tchoboian v. Fedex Office & Print Services, Inc.*, 2011 WL 12842228 *2 (C.D. Cal. Jan. 28, 2011); *Tchoboian v. Fedex Office & Print Services, Inc.*, 2011 WL 12842230 *3-4 (C.D. Cal. Nov. 14, 2011); *Pirian v. In-N-Out Burgers*, 2007 WL 1040864 *3 (C.D. Cal. 2007); *Arcilla v. Adidas Promotional Retail Ops.*, 488 F.Supp.2d 965, 970 (C.D. Cal. 2007); *Soualian v. International Coffee and Tea LLC*, 2007 WL 4877903 *3 (C.D. Cal. 2007); *Lopez v. Gymboree Corp.*, 2007 WL 1690886 *3 (N.D. Cal. 2007); *Aeschbacher v. Cal. Pizza Kitchen,* 2007 WL 1500853 *3 (C.D. Cal. 2007); *Edwards v. Toys" R" Us,* 527 F. Supp. 2d 1197, 1209 (C.D. Cal. 2007); *Seig v. Yardhouse Rancho Cucamonga, LLC*, CV07-2105 PA (MANx) (C.D. Cal. 2007); *Blanco v. El Pollo Loco, Inc.*, 2007 WL 1113997 *2 (C.D. Cal.).

"intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm." *Spokeo* at 1549-1550.  "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."  *Id.* at 1549.  If the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"—or, put in fewer words, if "the common law permitted suit" in analogous circumstances—the plaintiff will have suffered a concrete injury that can be redressed by a federal court.  *Id.*; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (explaining that Article III encompasses "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process").

But the Court made clear that a plaintiff need not dig up a common-law analogue to establish a concrete injury, because Congress has the power (and is in fact "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law."  *Spokeo*, 136 S. Ct. at 1549; *see also Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) ("[Congressional] authorization is of critical importance to the standing inquiry: 'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'").  Said differently, Congress can create "new rights of action that do not have clear analogs in our common-law tradition." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992) (Kennedy, J., concurring).

"In exercising this power, however, Congress must at least identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring the suit."  *Massachusetts*, 549 U.S. at 516.  If it does so, the plaintiff will be able to establish standing so long as she is part of that class of people.  Hence Justice Scalia's observation that standing's "existence in a given case is largely within the control of Congress."  Antonin Scalia, *The Doctrine of Standing as an*

- 14 -

*Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 885 (1983).

 While not required to establish that, absent the passage of FACTA, Plaintiffs would have had standing to pursue the present claim, the fact that they could do so further buttresses their Article III standing.  For hundreds of years, common-law courts have construed the violation of a legal right to be an injury *per se* that demands a remedy:  "Every violation of a right imports some damage, and if none other be proved, the law allows a nominal damage."  *Whittemore v. Cutter*, 29 F. Cas. 1120 (C.C.D. Mass. 1813) (Story, J.).  Injury to a legal right—including those surrounding violations of constitutional rights or contractual rights, defamation, patent infringement, and more—have been traditionally recognized as actionable in federal court without a showing of additional harm.  *See, e.g., Carey v. Piphus*, 435 U.S. 247, 266 (1978) (holding that "denial of procedural due process [is] actionable for nominal damages without proof of actual injury"); *Pollard v. Lyon*, 91 U.S. 225, 227 (1876) (upholding presumed damages for defamation *per se*); *Wilcox v. Plummer's Ex'rs*, 29 U.S. 172, 181–82 (1830) (holding that nominal damages are available "immediately" upon breach of contract, before any other damages are proven); *Whittenmore*, 29 F. Cas. 1120 (1813) (holding that a patent owner could recover nominal damages from a defendant who made, but never used or sold, an infringing machine).

 Similarly, common-law claims sounding in restitution or unjust enrichment do not require a plaintiff to show that she has suffered a loss beyond the intrusion upon her rights. *See* 1 Dan B. Dobbs, *Law of Remedies: Damages - Equity - Restitution* § 1.1 at 5 (2d ed. 1993) ('[R]estitution is measured by the defendant's gains, not by the plaintiff's losses."); 1 George E. Palmer, *The Law of Restitution* § 2.1 at 51 (1978) ("[I]n the damage action the plaintiff seeks to recover for the harm done to him, whereas in the restitution action he seeks to recover the gain acquired by the defendant through the wrongful act.").

- 15 -

As explained above, FACTA was enacted in part "to protect the secrecy, and, thus, the privacy of card holders' complete payment card account numbers and information." *Creative Hospitality Ventures*, 655 F.Supp.2d at 1333-1334.

> "Congress, at the very least, recognized a card holder's right of privacy in the card holder's complete card account number and account information, and a corresponding right of privacy not to have that information exposed on an electronically printed payment card receipt." *Id.* at 1334.

The disclosure of Plaintiffs' credit card information invaded Plaintiffs' privacy and secrecy interests, both of which are traditionally regarded as providing a basis for a lawsuit.

> "One of the ways that *Spokeo* identifies to establish that an intangible injury is concrete is to show that it 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.' *Spokeo* at 1549.  Invasion of privacy is just such an intangible harm recognized by the common law.  Almost all states recognize invasion of privacy as a common law tort. See Eli A. Meltz, No Harm, No Foul? Attempted Invasion of Privacy and the Tort of Intrusion Upon Seclusion, 83 Fordham L. Rev. 3431, 3440 (May, 2015) (state-by-state survey; 'Currently, the vast majority of states recognize the intrusion strand of invasion of privacy either under common law or by statute')." *Mey v. Got Warranty, Inc.*, 2016 U.S. Dist. LEXIS 84972, at *9-10 (N.D. West Virginia June 30, 2016).

Common-law courts recognized such claims without proof of any other injury because the invasion of privacy was itself regarded as a distinct injury.  See *Parks v. IRS*, 618 F.2d 677, 683 (10th Cir. 1980) (the "common law tort of invasion of privacy" created a remedy for "personal wrongs which result[ed] in injury to plaintiffs' feelings and [were] actionable even though the plaintiff suffered no pecuniary loss nor physical harm.  It is the invasion of the right that is the essence of the action."), citing 62 Am. Jur. 2d Privacy § 45 (emphasis added); accord *Pichler v. UNITE*, 542 F.3d 380, 398-399 (3rd Cir. 2008).

Modern courts have similarly regarded invasions of secrecy.  "Indeed, courts have recognized as a 'species of privacy violation . . . violations of a right to secrecy of personal information . . . .'" *Creative Hospitality Ventures*, 655 F.Supp.2d at 1333-1334, quoting *Hooters*

*of Augusta, Inc. v. Am Global Ins. Co.*, 157 Fed. Appx. 201, 208 (11th Cir. 2005) (citing *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 640-641 (4th Cir. 2005); *Am States Ins. Co. v. Capital Assocs. of Jackson County, Inc.*, 392 F.3d 939, 942-943 (7th Cir. 2004)).

> "It is not only the common law that recognizes as actionable the harm caused by invasion of privacy.  The right to privacy is protected under the Constitution. See, e.g., *Lawrence v. Texas*, 539 U.S. 558 (2003); *Eisenstadt v. Baird*, 405 U.S. 438 (1972). See also *Winston v. Lee*, 470 U.S. 753 (1985) (characterizing the Fourth Amendment as protecting expectations of privacy, 'the most comprehensive of rights and the right most valued by civilized men').  *Mey*, 2016 U.S. Dist. LEXIS 84972 *10-11.

Thus, analogizing to these common-law claims—where the violation of the right itself was sufficient harm for entry into court—Defendants cannot seriously argue that Plaintiffs do not have Article III standing to vindicate their rights.

Even in the absence of legislative intervention, common-law courts have long exercised authority to address new problems that arise over time.  "The entire history of the development of Tort law," for instance, "shows a continuous tendency to recognize as worthy of legal protection interests which previously were not protected at all."  1 Restatement (First) of Torts § 1 cmt. e, at 4.  Such expansion of legal rights "meet[s] the demands of society" in the face of "[p]olitical, social, and economic changes."  Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 193 (1890); *id.* at 207 (recognizing "[that] the individual shall have full protection in person and in property is a principle as old as the common law; but it has been found necessary from time to time to define anew the exact nature and extent of such protection").

Courts should give great deference to Congress' policy decisions because Congress "is far better equipped than the judiciary to amass and evaluate the vast amount of data bearing upon" legislative decisions.  *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 665 (1994). Here,

Congress found that identity theft had "reached almost epidemic proportions in recent years." H.R. Rep. No. 108-263, at 25 (2003). Thus, Congress passed FACTA to require the truncation of expiration dates and card numbers on receipts given to consumers. In so doing, Congress acted consistently with the Court's ruling in *Massachusetts*: "In exercising this power, however, Congress must at least identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring the suit." *Massachusetts*, 549 U.S. at 516. Unquestionably, Plaintiffs belong to the "class of persons entitled to bring the suit," and, thus, have Article III standing.

## IV.   PLAINTIFFS' FAC ADEQUATELY PLEADS WILLFULNESS

"Pursuant to the liberal notice pleading standards of the Federal Rules, Plaintiff may generally plead willfulness." *Pirian v. In-N-Out Burgers*, 2007 WL 1040864 *6 (C.D. Cal. April 5, 2007). Federal Rule of Civil Procedure 9(b) expressly states, "Malice, intent, knowledge, and other ***conditions of a person's mind <u>may be alleged generally</u>***." Rule 9(b); 2007 WL 1040864 *6. Undeniably, "willfulness" is a state of mind, and therefore Rule 9(b) permits it to be alleged generally.[7] The Supreme Court has repeatedly held that these Federal Rules do not require the pleading of specific facts. "Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "In addition, when ruling on a defendant's motion to dismiss, a judge must accept as

---

[7] A "willful" violation under FACTA includes "not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 (2007); *Bateman*, 623 F.3d at 711 n.1. Thus, it gives "a plaintiff a ***choice of mental states*** to show in making a case for liability." *Safeco*, 551 U.S. at 60 (emphasis added).

- 18 -

true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 93-94.[8]

The Supreme Court has also explained that it is undesirable to require detailed or specific pleading of a condition of mind:

> "[A] rigid rule requiring the detailed pleading of a condition of mind would be undesirable because, absent overriding considerations pressing for a specificity requirement, as in the case of averments of fraud or mistake, the general 'short and plain' mandate in Rule 8(a) ... should control the second sentence of Rule 9(b)." *Ashcroft v. Iqbal*, 556 U.S. 662, 686-687 (2009) (quoting C. Wright & A. Miller, Federal Practice and Procedure § 1301, p. 291 (3d ed. 2004)).

Though willfulness may be generally pled, Plaintiffs have alleged deliberate conduct that more than aptly pleads willfulness. In the seminal FACTA case of *Pirian v. In-N-Out Burgers*, 2007 WL 1040864 *6, the court, facing similar arguments explained the standards that satisfy the pleading of willfulness as follows:

> "Plaintiff alleges that despite having had three years to comply with FACTA, INO willfully violated the law and failed to protect Plaintiff and the purported class against identity theft and credit and debit card fraud by printing more than the last five digits of the card number and/or the expiration date on receipts. Compl. ¶ 3. Plaintiff also alleges that INO knew of and was informed about FACTA's specific requirements mandating the truncation of card numbers and prohibiting the printing of expiration dates. Compl. ¶ 35. Plaintiff alleges that despite its knowledge of the FACTA receipt requirements and the importance of truncating card numbers and not printing expiration dates, INO willfully, intentionally, and recklessly violated FACTA's requirements. Compl. ¶ 37. These willfulness allegations are sufficient to satisfy the liberal notice pleading requirements of the Federal Rules…. [T]here is no requirement that INO receive notice from another entity to invoke its obligations under the FCRA. Rather FACTA is a direct prohibition on what merchants like INO may print on credit/debit card receipts. Consequently, there are no underlying facts to allege to show willfulness beyond INO's knowledge of its obligations under FACTA and its failure to comply. Thus, in the instant case, Plaintiff may allege willfulness by simply pleading that INO was aware of FACTA, yet failed to bring its

---

[8] On a 12(b)(6) motion to dismiss, as Defendants concede (See Defendants' Motion, Dkt. 36 at p. 11 of 19) "[t]he court must 'accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.' *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)." Moreover, dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

receipt printing into compliance with FACTA's requirements before the end of the three year grace period."  *Pirian*, 2007 WL 1040864 *6.

The *Pirian* plaintiff's allegations, which were sufficient to allege willfulness are alleged against Defendants.  Just as in *Pirian*, Plaintiffs have alleged that despite having "had up to three years to comply, Defendants have willfully violated this law and failed to protect Plaintiffs and others similarly situated against identity theft and debit card fraud by printing the expiration date of the card and the last four digits of the card number on receipts provided to credit card and debit card cardholders transacting business with Defendants."  FAC at ¶ 3.

Just as in *Pirian*, Plaintiffs allege that "Defendants and each of them knew of and were well informed about the law, including specifically FACTA's requirements concerning the truncation of credit and debit card numbers and prohibition on the printing of expiration dates." FAC at ¶ 39.  Plaintiffs allege that various entities, including VISA, MasterCard, the PCI Security Standards Council, companies that sell cash register and other devices for the processing of credit or debit card payments, companies that sell software to operate payment card devices, companies that maintain and repair hardware or software used to process payment card transactions, and Defendants' merchant bank which processes credit and debit card payments for transactions occurring at Defendants' stores informed Defendants about FACTA, including its specific requirements concerning the truncation of credit and debit card numbers and prohibition on the printing of expiration dates, and Defendants' need to comply with same. FAC at ¶¶ 40-42.

Just as in *Pirian*, Plaintiffs allege that "despite knowing and being repeatedly informed about FACTA and the importance of truncating credit and debit card numbers and preventing the printing of expiration dates on receipts, and despite having had over three years to comply with

FACTA's requirements, Defendants knowingly willfully, intentionally, and recklessly violated FACTA's requirements."  FAC at ¶ 47.

Like the allegations in *Pirian*, Plaintiff's allegations are sufficient to plead willfulness in this case.  This fact alone is reason enough to deny Defendants' motion to dismiss.  Yet, Plaintiffs' allegations go further.  Plaintiffs' FAC alleges that Defendants knew that their electronic receipt printing equipment were configured and/or otherwise outdated such that they were printing debit card and credit card receipts that displayed the card's expiration date printed on customer receipts in violation of FACTA, yet, despite this knowledge, Defendant continued to violate FACTA as a means of avoiding the additional expense, time, and other resources required to properly configure and otherwise update their receipt equipment.  FAC at ¶ 44.

In addition to *Pirian*, many other federal courts have found allegations similar or identical to Plaintiffs' allegations sufficient to allege a willful FACTA violation.  In doing so, many of these courts rejected the same arguments Defendants make here.  In *Steinberg v. Stitch & Craft, Inc.*, the Court found the following allegations "sufficient to infer that Defendant acted knowingly or recklessly when it violated [FACTA]:"

> "Plaintiff's allegations of willfulness are based on disclosures provided by major credit card companies to merchants following the enactment of FACTA.  Plaintiff alleges that Defendant had actual and constructive knowledge of FACTA's requirements several years before it was required to come into compliance, but nonetheless ignored these requirements after FACTA became effective.   The Complaint states that major credit card companies 'notified the merchants, *including the Defendant*, that the FACTA prohibited the printing of more than the last five digits of the credit/debt card number and/or the expiration dates associated with the credit/debit card account and that they were required to comply with the FACTA.'  Finally, the Complaint alleges Defendant violated FACTA because it 'did not wish to incur the additional expense of reprogramming or updating its point-of-sale equipment.'"  *Steinberg*, 2009 WL 2589142 *2 (S.D. Fla. Aug. 18, 2009).

Likewise in *De Cesare v. Laboratory Corp. of American Holdings*, 2016 WL 3483205 *3

- 21 -

(C.D. Cal. May 31, 2016), the court found similar allegations to be sufficient:

> "Plaintiffs outline the FACTA requirements, FAC ¶¶ 1–3, detail how LabCorp was informed of these requirements by credit card companies and other entities, *id.* ¶¶ 27–30, and discuss the compliance period, *id.* ¶¶ 3, 25.  Further, according to Plaintiffs, despite knowledge of FACTA's requirements, Defendant 'decided to forego and otherwise update their electronic receipt printing equipment.' *Id.* ¶ 31.  Thus, 'Defendant's violations of FACTA were not accidental oversights, but were a means of avoiding the additional expense, time, and other resources required to properly configure and otherwise update their electronic receipt printing equipment.' *Id.*  Accepting these allegations as true, as the Court must at this stage, the Court finds Plaintiffs have adequately alleged willfulness.  Indeed, 'such allegations have repeatedly been held sufficient to survive the pleading stage.'"

Other examples abound.[9]

Yet the FAC does not stop there.  There is even more in this case, far more.  As explained in Section I above, this is a case where Defendants were served on or about November 2, 2015

---

[9] *Lavery v. Radioshack Corp.*, No. 13-cv-05818, 2014 U.S. Dist. LEXIS 85190 *5-6 (N.D. Ill. June 23, 2014) ("such allegations have repeatedly been held sufficient to survive the pleading stage") (collecting cases); *In re The TJX Companies, Inc.*, MDL No. 1853, 2008 WL 2020375 *2 and n.5 (D. Kan. May 9, 2008) (collecting cases and explaining that "Defendants' suggestion that *Bell Atlantic Corp. [v. Twombly]* somehow undermines this weight of authority is without merit. Each of the cases applied the plausibility standard set forth in that decision."); *Ramirez v. MGM Mirage, Inc.*, 524 F.Supp.2d 1226, 1232-1233 (D. Nev. 2007) (collecting cases and explaining that "Plaintiff's allegations plausibly support willfulness"); *Follman v. Hospitality Plus of Carpentersville, Inc.*, 532 F.Supp.2d 960, 962-963 and n. 1 (N.D. Ill. 2007) ("We find these allegations plausibly suggest that defendant willfully violated the statute." Also explaining *Twombly* and that under Rule 9(b), "conditions of a person's mind may be alleged generally."); *Iosello v. Leiblys, Inc.*, 502 F.Supp.2d 782, 784-785 (N.D. Ill. 2007) ("we conclude that sufficient allegations have been pled … that 'plausibly suggest' that Leiblys willfully violated FACTA"); *Troy v. Home Run Inn, Inc.*, No. 07 C 4331, 2008 WL 1766526, at *2 (N.D. Ill. April 14, 2008) (holding that willfulness sufficiently alleged under *Twombly*); *Follman v. Village Square, Inc.*, 542 F.Supp.2d 816, 820 (N.D. Ill. Dec. 18, 2007) (same); *Sanders v. W & W Wholesale Inc.*, No. 11 C 3557, 2011 WL 4840978, at *2 (N.D. Ill. Oct. 11, 2011) (same); *Buechler v. Keyco, Inc.*, No. WDQ-09-2948, 2010 WL 1664226, at *2-3 (D. Md. April 22, 2010) (same); *Dover v. Shoe Show, Inc.*, No. 12-694, 2013 U.S. Dist. LEXIS 59418, at *6-7 (W.D. Pa. Mar. 19, 2013) (same); *Harris v. Wal-Mart Stores, Inc.*, No. 07 CV 2561, 2007 WL 3046162, at *2 (N.D. Ill. Oct. 10, 2007) ("Harris's factual allegations clearly raise the right to relief above a speculative level; and his claim is, therefore, sufficiently plead, within the requirements outlined by the United States Supreme Court in *Bell Atlantic [v. Twombly]*").

with a letter (together with the then not yet filed Complaint) demanding that Defendants cease and desist their FACTA violations, the Complaint against the Defendants for FACTA violations was later filed on November 18, 2015 (Dkt. No. 1) and Defendants each executed a Waiver Of The Service Of Summons form on December 9, 2015 (Dkt. Nos. 7 and 8).  FAC at ¶ 4.  The FAC further pleads that despite being in the midst of a lawsuit charging Defendants with FACTA violations, Defendants violated their customers' FACTA rights at least until August 17, 2016 (approximately 9½ months after they were served with the November 2, 2015 letter demanding that they cease and desist their FACTA violations).  FAC at ¶ 4.

As the Seventh Circuit has pointed out, in such circumstances, a company has to know there is a risk of error where the identical risk had materialized previously (such as here because Defendants were already facing a FACTA lawsuit) and knowing the risk and failing to take any precaution against it—even if adequate precaution may not cost anything—are "indicative of willful violation" and that the "violation probably was willful."  *Redman v. Radio Shack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014).  Of course, for purposes of a motion to dismiss, the only thing that must be pled is a *plausible* allegation of willfulness.[10]  Yet, as the Seventh Circuit has pointed out, circumstances such as those here where a defendant has already been sued for FACTA violations, push the needle far past plausibility and reach probability.  *Ibid.*

Defendants try to avoid the import of the FAC by presenting an extraneous document, "EMV Receipt Requirements," together with emails and other argument, to which Plaintiffs have filed objections concurrently herewith.  Beyond the objections, Defendants cannot plausibly show Defendants' lack of knowledge of FACTA's requirements, because according to

---

[10] As the Supreme Court has explained, "of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

Defendants, **_they had already been sued_** when they received the "EMV Receipt Requirements" in April 2016.    Further, the "EMV Receipt Requirements" and Defendants' arguments concerning their actions based thereon do not support the accidental or inadvertent nature of the violation.    To the contrary, they show that Defendants were in fact giving thought to what information they were including on their receipts.    They also support willfulness because according to Defendants' counsel's explanation—despite full knowledge of the FACTA law and while in the midst of an ongoing FACTA lawsuit against Defendants—Defendants decided that their "merchant bank's" "directive" to their "IT department" should be used to trump the requirements of a federal statute.

At best for Defendants, the "EMV Receipt Requirements," even if they were admissible on a motion to dismiss and Defendants' counsel's explanation were accepted as true, would present the following factual dispute that cannot be resolved on a motion to dismiss:   Were Defendants reckless when—despite full knowledge of the FACTA law and while in the midst of an ongoing FACTA lawsuit against Defendants—Defendants decided that their "merchant bank's" "directive" to their "IT department" should be used to trump the requirements of a federal statute?[11]

Defendants do not cite any case that involves the type of factual allegations present here.

In *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 2014 WL 2990110 (S.D.N.Y. June 30,

---

[11] The Supremacy Clause of the United States Constitution, Article VI. Clause 2, expressly states that "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the authority of the United States, shall be the supreme Law of the Land…."  Whether a violation of FACTA is "willful" (including reckless) under 15 U.S.C. § 1681n is a question of fact for the jury.  *Edwards*, 527 F.Supp.2d at 1210 and cases cited therein.  And, according to the Seventh Circuit, the circumstances here indicate that the "violation probably was willful." *Redman*, 768 F.3d at 638.

2014), the plaintiff pled allegations suggesting that the violations were merely negligent. Specifically, the plaintiff alleged that defendant took steps to change its receipts to comply with FACTA's excess digits' requirement, but did not plead facts to show that the failure was anything but negligent. *Id.* at *4 and n.2 ("there is no suggestion at all in the Complaint that defendant consciously included the expiration date on its receipts").

In *Katz v. Donna Karan Intern., Inc.*, 2015 WL 405506 (S.D.N.Y. Jan. 29, 2015) there were no allegations that "Defendants knew their conduct violated the truncation requirement or that Defendants consciously chose to violate FACTA." *Id.* at *2.

Further, *Crupar-Weinmann* and *Katz* were reversed by the Second Circuit. *Cruper-Weinmann v. Paris Baguette America, Inc.*, --- Fed.Appx. ---, 2016 WL 3553448 (2nd Cir. June 30, 2016). Noting this reversal, the court in *Altman*, declined to consider *Katz* and recently denied a similar 12(b)(6) motion in a FACTA case. *Altman*, 2016 WL 3946780 *7.

In sum, as this Court aptly explained in another FACTA case:

> "Plaintiff has adequately alleged that Defendants, knowing of FACTA's importance and being informed of its requirements, either read or implemented those requirements in such a reckless, haphazard manner as to run an unjustifiably high risk of violating FACTA. To require more at the pleading stage, prior to discovery into a defendant's internal communications or compliance procedures, would effectively read FACTA's willfulness tier out of the statute." *Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13 Civ. 7174 KPF, 2015 WL 4486311 *4 (S.D.N.Y. July 23, 2015).

Date: November 21, 2016                 Respectfully submitted,


                                        */s/ Chant Yedalian*
                                        Chant Yedalian (*pro hac vice*)
                                        CHANT & COMPANY
                                        A Professional Law Corporation
                                        1010 N. Central Ave.
                                        Glendale, CA 91202

- 25 -

Telephone: 877.574.7100
Facsimile: 877.574.9411
chant@chant.mobi

Charles J. LaDuca (3975927)
Peter Gil-Montllor (5300553)
CUNEO GILBERT & LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, New York 11241
Telephone: 202.789.3960
Facsimile: 202.789.1813
charles@cuneolaw.com
pgil-montllor@cuneolaw.com