UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHLEEN O'SHEA and<br>SANDEEP TRISAL<br>on behalf of themselves and all<br>others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>P.C. RICHARD & SON, LLC (d/b/a P.C.<br>Richard & Son) and P.C. RICHARD & SON,<br>INC. (d/b/a P.C. Richard & Son),<br><br>        Defendants. | Case No. 2:15-cv-09069-KPF |

**PLAINTIFFS' OBJECTIONS TO THE DECLARATION OF ATTORNEY**

**JONATHAN A. DIRENFELD (Dkt. No. 37) AND**

**EXHIBITS B AND C ATTACHED THERETO (Dkt. Nos. 37-2 and 37-3)**

Plaintiffs, Kathleen O'Shea and Sandeep Trisal, hereby object to the Declaration of Attorney Jonathan A. Direnfeld (Dkt. No. 37) and Exhibits B and C attached thereto (Dkt. Nos. 37-2 and 37-3) as follows:

**I.    NO PERSONAL KNOWLEDGE**

Attorney Direnfeld states that he is "an associate in the law firm of Orrick, Herrington & Sutcliffe LLP, attorneys of record for Defendants P.C. Richard & Son, LLC (d/b/a P.C. Richard & Son) and P.C. Richard & Son, Inc. (d/b/a P.C. Richard & Son) ('Defendants')," that he is "familiar with the events and pleadings in this action," and that he is appearing *pro hac vice* in this matter.  Dkt. No. 37 at ¶ 1.

Attorney Direnfeld is not a percipient witness and he does not claim he is a percipient witness who has personal knowledge of the "EMV Receipt Requirements" which he has

1

submitted as Exhibit C attached thereto (Dkt. No. 37-3) or the comments concerning it made in Exhibit B (Dkt. No. 37-2).

For example, Attorney Direnfeld does not state that he has ever held a position (employment or otherwise) with either of Defendants' companies, let alone a company position that enables him to have personal knowledge of the matters he seeks to present.

Thus, Attorney Direnfeld is not a percipient witness and does not have personal knowledge and he may not present testimony.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Federal Rules of Evidence ("FRE") Rule 602.

The fact that Attorney Direnfeld is not a percipient witness and does not have personal knowledge is also illustrated by counsel's comments at the August 18, 2016 hearing concerning lack of knowledge. Exhibit 1: Transcript of August 18, 2016 hearing at pp. 12:1-16 ("[U]p until about half an hour ago I understood this was a debit case and I understood that the expiration date information had ceased existing on debit cards contemporaneous with the filing of the complaint…. I was sitting outside there 20 minutes ago, half an hour ago, and I was told that there were debit cards showing up with expiration dates on them and there were now credit cards now showing up with expiration dates on them. I assume if they are telling you that that they have some evidence of that, I am not going to contest that. On the other hand, I know nothing about it.") and at pp.16:10-13 ("Mr. Coll has adequately set forth our arguments.").

//

//

//

## II. IMPROPER OPINION CONCERNING THE MEANING AND EFFECT OF THE "EMV RECEIPT REQUIREMENTS" AND HOW IT WAS TREATED

Based upon Attorney Direnfeld's Declaration, including Exhibits B and C thereto, Defendants make arguments in their motion to dismiss concerning the meaning and effect of the "EMV Receipt Requirements."

For example, Defendants argue that the meaning and effect of the "EMV Receipt Requirements" is that Defendants treated it as a "directive" from Defendants' merchant bank requiring Defendants to print the expiration date of an American Express card on customer receipts. However, the "EMV Receipt Requirements" do not state any such thing, nor are they described as a "directive," let alone a directive that purports to require Defendants to print an expiration date on customer receipts.

For example, there is language concerning MasterCard that states that "The card's Expiry Date must not be printed on *either* the *merchants* **copy** or the *__cardholder's__* **copy** of the terminal **receipt**. In addition, the PAN of the application used for the transaction must be printed in *truncated form on the __cardholder__ receipt* and correspond to the chips PAN that was used to carry out the transaction." Exhibit C, Dkt. No. 37-3 at p. 4 of 8 (emphasis added).

In contrast, the purported language from the document that Attorney Direnfeld relies upon for American Express states "Expiration Date of Card (MMYY) M*" and the corresponding "*" asterisk "*Indicates data elements that ***__must be stored electronically__*** during a PIN transaction." Exhibit C, Dkt. No. 37-3 at p. 7 of 8 (emphasis added). Unlike the language for MasterCard, the language for American Express does not state that it concerns "*either* the *merchants* **copy** or the *__cardholder's__* **copy** of the terminal **receipt**." To the contrary, it suggests that as to American Express it "*Indicates data elements that ***__must be stored electronically__***

3

during a PIN transaction" or perhaps on any possible merchant copy of a receipt (electronic or otherwise). Similarly, the image that Defendants rely upon does not indicate whether it is a sample merchant copy of a receipt or a sample customer receipt. Exhibit C, Dkt. No. 37-3 at p. 8 of 8. Nor does the document explain what is meant by "Expiration Date (Current MSR Requirement)." *Ibid.*

In any event, regardless of what the document states, there is no competent or admissible evidence to show who generated the document, what they meant by the document, if and when the document was received by Defendants and, if received, how Defendants treated it, including its purported meaning and effect.

Again, this violates Rule 602 which requires personal knowledge.

Moreover, even if Attorney Direnfeld claimed to be an expert on such "EMV Receipt Requirements" (he does not claim to be an expert), his testimony would still not be admissible:

> "Expert witnesses are not permitted to testify as to the 'knowledge, motivations, intent, state of mind, or purposes' of others. See *In re Fosamax Products Liability Litigation*, 645 F.Supp.2d 164, 192 (S.D.N.Y.2009); *In re Rezulin Products Liability Litigation*, 309 F.Supp.2d 531, 546 (S.D.N.Y.2004) ('[T]he opinions of these witnesses on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.'); *Taylor v. Evans*, 1997 WL 154010, at *2 (S.D.N.Y.1997) ('[M]usings as to defendants' motivations would not be admissible if given by any witness-lay or expert.'). Willig's expertise as an economist does not give him any specialized knowledge to discern the thought processes of [others]. Id. ('regulatory expertise does not give her the ability to read minds.')" *Fleischman v. Albany Medical Center*, 728 F.Supp.2d. 130, 168 (N.D. N.Y. 2010).

//

//

//

## III. IMPROPER ATTEMPT TO CONVERT MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT; FAILURE TO MEET EVIDENTIARY REQUIREMENTS; FAILURE TO PROVIDE PLAINTIFFS WITH ANY OPPORTUNITY TO CONDUCT DISCOVERY AND PRESENT RELEVANT MATERIAL

Attorney Direnfeld's Declaration and attempt to introduce Exhibits B and C to dismiss a case flout the evidentiary rules concerning motions to dismiss.  They also flout the evidentiary rules concerning motions for summary judgment because, in addition to the fact that the material is not admissible, Defendants seek to use it as the *only* purported evidence in this case without the benefit of any discovery to Plaintiffs.  Indeed, the discovery period has not even commenced yet in this case.

Even if Defendants' materials were admissible as evidence (which they are not), Federal Rule of Civil Procedure 12(d) does not allow such matters to be considered on a 12(b)(6) motion to dismiss, without converting the motion into a motion for summary judgment.  Further, if a motion to dismiss were treated as a motion for summary judgment, the rules require admissible evidence on a motion for summary judgment and also require that Plaintiffs must be given an opportunity to present all material relevant to the motion, and material relevant to the motion would obviously require that Plaintiffs be given an opportunity to conduct discovery to obtain such material.

Federal Rule of Civil Procedure 12(d) provides as follows:

> "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

In turn, Federal Rule of Civil Procedure 56 provides that:

Summary judgment may only be granted if "there is no genuine dispute as to any material fact" Rule 56(a).

"A party asserting that a fact cannot be … genuinely disputed must support the assertion by" admissible evidence and "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Rule 56(c)(1) and (c)(2).

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Rule 56(c)(4).

Defendants attempt to flout these basic requirements by arguing that Plaintiffs had notice of the "EMV Receipt Requirements" and therefore its introduction does not improperly convert a motion to dismiss into a motion for summary judgment.  Defendants are wrong.

First, as Defendants concede, the "EMV Receipt Requirements" were not provided to Plaintiffs until *after* Plaintiffs had already filed their First Amended Complaint ("FAC").  See Defendants' Motion, Dkt. 36 at p. 9 of 19 ("Plaintiffs filed their Amended Complaint before a copy of the directive from P.C. Richard's merchant bank was provided.").

Second, even if Plaintiffs had prior and timely notice of the "EMV Receipt Requirements," Defendants' attempt to convert a motion to dismiss into one for summary judgment would still be improper.  It is only where a "plaintiff has actual notice of all the information in the movant's papers and has relied upon those documents in framing the complaint that the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991).

> "In *Cortec*, we explored the question of what documents a district court may consider when disposing of a Rule 12(b)(6) motion. We stated that, generally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered.  *Cortec*, 949 F.2d at 48. Accordingly, '[w]here plaintiff has actual notice of all the information in the movant's

papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.' *Id.* In the context of claims arising from an unprofitable corporate acquisition, we found that the district court properly considered certain documents related to the purchase of shares, because they were 'documents plaintiffs had either in [their] possession or had knowledge of and upon which they relied in bringing suit.' *Id.* We considered this standard again in *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993), where we stated in dicta that, on a motion to dismiss, a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.' Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2nd Cir. 2002).

Third, as explained above, the "EMV Receipt Requirements" are not admissible.

Fourth, even if the "EMV Receipt Requirements" were admissible, as explained above, they do not state what Defendants claim they state and Defendants' arguments concerning their meaning and effect would still be inadmissible as evidence.

Fifth, Plaintiffs have not had any opportunity to conduct discovery (the discovery period has not even commenced) and therefore Plaintiffs have not had an opportunity to obtain material relevant to the issues. As this Court explained in another FACTA case:

"Defendants submit, as Exhibits A and B to the D'Amato Declaration, purported statements from their merchant bank in the months before the incident giving rise to the Complaint that make no mention of FACTA. Yet as this Court has repeatedly noted, the doctrine of incorporation by reference should not be read so broadly as to allow a defendant to claim that a document represents the entire set of materials that a broadly phrased complaint could possibly be referring to; 'the Court would have to rely on Defendants' assertion that the [materials] are produced in context and form the entirety of the alleged ... conduct. Such reliance would properly require the Court to convert the motion to dismiss to a Rule 56 motion for summary judgment, and allow Plaintiff 'a reasonable opportunity to present all the material that is pertinent to the motion." Catapano–Fox v. City of New York, No. 14 Civ. 8036(KPF), 2015 WL 3630725, at *1 n. 1 (S.D.N.Y. June 11, 2015) (quoting Fed.R.Civ.P. 12(d)); see also BWP Media USA, Inc. v. Gossip Cop Media, LLC, No. 13 Civ. 7574(KPF), 2015 WL 321863, at *3 (S.D.N.Y. Jan. 26, 2015). Accordingly, Plaintiff's request that the

Court not consider the D'Amato Declaration is granted. (Pl.Opp.14)." *Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13 Civ. 7174 KPF, 2015 WL 4486311 *4 at n. 5 (S.D.N.Y. July 23, 2015).

Sixth, even if the "EMV Receipt Requirements" were admissible and stated what Defendants claim (and want them) to state, summary judgment would still not be proper.

Plaintiff Kathleen O'Shea's counsel served Defendants on or about November 2, 2015 with a letter (together with the then not yet filed Complaint) demanding that Defendants cease and desist their FACTA violations. FAC at ¶ 4. The Complaint against the Defendants for FACTA violations was later filed on November 18, 2015 (Dkt. No. 1) and Defendants each executed a Waiver Of The Service Of Summons form on December 9, 2015 (Dkt. Nos. 7 and 8).

Defendants cannot plausibly show Defendants' lack of knowledge of FACTA's requirements, because according to Defendants, they had already been sued when they received the "EMV Receipt Requirements" in April 2016. Further, the "EMV Receipt Requirements" and Defendants' arguments concerning their actions based thereon do not support the accidental or inadvertent nature of the violation. To the contrary, they show that Defendants were in fact giving thought to what information they were including on their receipts. They also support willfulness because according to Defendants' counsel's explanation—despite full knowledge of the FACTA law and while in the midst of an ongoing FACTA lawsuit against Defendants—Defendants decided that their "merchant bank's" "directive" to their "IT department" should be used to trump the requirements of a federal statute.

At best for Defendants, the "EMV Receipt Requirements," even if they were admissible and Defendants' counsel's explanation were accepted as true, would present the following factual dispute that cannot be resolved on either a motion to dismiss or a motion for summary judgment: Were Defendants reckless when—despite full knowledge of the FACTA law and while in the

midst of an ongoing FACTA lawsuit against Defendants—Defendants decided that their "merchant bank's" "directive" to their "IT department" should be used to trump the requirements of a federal statute?

The Supremacy Clause of the United States Constitution, Article VI. Clause 2, expressly states that "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the authority of the United States, shall be the supreme Law of the Land…."

Whether a violation of FACTA is "willful" (including reckless) under 15 U.S.C. § 1681n is a question of fact for the jury.  *Edwards v. Toys "R" Us*, 527 F.Supp.2d 1197, 1210 (C.D. Cal. 2007) and cases cited therein.

Moreover, as the Seventh Circuit has explained, a company has to know there is a risk of error where the identical risk had materialized previously (such as here because Defendants were already facing a FACTA lawsuit) and knowing the risk and failing to take any precaution against it—even if adequate precaution may not cost anything—are "indicative of willful violation" and that the "violation probably was willful."  *Redman v. Radio Shack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014).

> "The willfulness issue in RadioShack case was straightforward. The company had been found in an earlier lawsuit to have left the expiration date on receipts in violation of a parallel state statute, see *Ferron v. RadioShack Corp.*, 175 Ohio App.3d 257, 886 N.E.2d 286 (2008), and apparently failed to take adequate precautions against repeating the violation, this time of the (materially identical) federal statute. By the time RadioShack discovered the mistake, 16 million unlawful receipts had been handed to its customers, as we know.  The company had to know that there was a risk of error because the identical risk had materialized previously.  Knowing the risk and failing to take any precaution against it—though a completely adequate precaution would have cost nothing—were indicative of willful violation…. RadioShack's violation probably was willful…"  *Redman v. Radio Shack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014).

On a 12(b)(6) motion to dismiss, as Defendants concede (See Defendants' Motion, Dkt. 36 at p. 11 of 19) "[t]he court must 'accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.' Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994)." Similarly, on a Rule 56 motion for summary judgment, "the court must, as noted, resolve all factual disputes and draw all inferences in favor of the non-moving party." *Edwards*, 527 F.Supp.2d at 1209. Either way, at best for Defendants, the issue of willfulness is a question of fact that cannot be resolved (let alone in Defendants' favor) on a motion to dismiss or motion for summary judgment.

Respectfully submitted,

Date: November 21, 2016

*/s/ Chant Yedalian*
Chant Yedalian (*pro hac vice*)
CHANT & COMPANY
A Professional Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Telephone: 877.574.7100
Facsimile: 877.574.9411
chant@chant.mobi

Charles J. LaDuca (3975927)
Peter Gil-Montllor (5300553)
CUNEO GILBERT & LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, New York 11241
Telephone: 202.789.3960
Facsimile: 202.789.1813
charles@cuneolaw.com
pgil-montllor@cuneolaw.com