USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 3, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
:
KATHLEEN O'SHEA and SANDEEP TRISAL, :
*on behalf of themselves and all others* :
*similarly situated,* :
:
                                    Plaintiffs, :    15 Civ. 9069 (KPF)
:
                  v. :    OPINION AND ORDER
:
P.C. RICHARD & SON, LLC *d/b/a* P.C. :
RICHARD & SON and P.C. RICHARD & :
SON, INC. *d/b/a* P.C. RICHARD & SON, :
:
                                    Defendants. :
:
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

    Plaintiffs Kathleen O'Shea and Sandeep Trisal bring this class action against Defendants P.C. Richard & Son, LLC and P.C. Richard & Son, Inc., for violations of the Fair and Accurate Credit Transactions Act of 2003, 15 U.S.C. §§ 1681-1681x ("FACTA"). Plaintiffs O'Shea and Trisal each allege that upon making a purchase at one of Defendants' locations, Defendants printed on their receipts the expiration dates of their debit and credit cards, respectively, in violation of 15 U.S.C. § 1681c(g).

    Defendants have moved to dismiss Plaintiffs' First Amended Complaint, the operative complaint in this case, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argue that (i) Plaintiffs lack Article III standing because they allege only a bare procedural violation and no actual harm or material risk of harm, and (ii) Plaintiffs failed to allege adequately a

willful violation of FACTA. Plaintiffs oppose the motion, and Plaintiff Trisal seeks leave to file an amended complaint if the motion is granted.

The parties' arguments are impacted significantly by a recent Second Circuit decision: *Crupar-Weinmann* v. *Paris Baguette America, Inc.*, 861 F.3d 76 (2d Cir. 2017). In light of the holding in that case and for the reasons set forth below, Defendants' motion to dismiss is granted and Plaintiff Trisal's request to file a Second Amended Complaint is denied.

## BACKGROUND[1]

### A. Factual Background

Plaintiffs allege that Defendants have willfully and repeatedly violated FACTA by printing expiration dates on credit and debit card receipts. (*See generally* FAC). FACTA provides in relevant part that "no person that accepts credit cards or debit cards for the transaction of business shall print" an improperly truncated receipt — one that contains more than five digits of the card number or the expiration date. 15 U.S.C. § 1681c(g). Defendant P.C.

---

[1] The facts set forth herein are drawn from Plaintiff's First Amended Class Action Complaint ("FAC" (Dkt. #33)), the operative complaint in this case, and the transcript of a conference the Court held on August 18, 2016 ("Transcript" (Dkt. #31)).

Where appropriate to its analysis, the Court will also reference Plaintiff Trisal's receipt ("Trisal Receipt" (Dkt. #37-1)), which was attached to the Declaration of Jonathan A. Direnfeld (Dkt. #37). On a Rule 12(b)(1) motion, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings," including affidavits and exhibits. *Feldheim* v. *Fin. Recovery Servs., Inc.*, — F. Supp. 3d —, No. 16 Civ. 3873 (KMK), 2017 WL 2821550, at *2 (S.D.N.Y. June 29, 2017) (quoting *Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)).

For ease of reference, the Court refers to Defendants' Memorandum of Law in Support of Their Motion to Dismiss as "Def. Br." (Dkt. #36); to Plaintiffs' Memorandum of Law in Opposition as "Pl. Opp." (Dkt. #40); to Defendants' Reply Memorandum of Law as "Def. Reply" (Dkt. #44); and to the parties' Supplemental Memoranda of Law as "Def. Supp." (Dkt. #53) and "Pl. Supp." (Dkt. #54).

Richard & Son, LLC owns and manages several retail store locations. (FAC ¶ 11). Defendant P.C. Richard & Son, Inc. also owns and manages several retail stores and does business with P.C. Richard & Son, LLC. (*Id.* at ¶ 12). The two entities collectively use the business name "P.C. Richard & Son." (*Id.*).

Sometime after November 17, 2013, Plaintiff O'Shea made a purchase at one of Defendants' locations and Defendants provided her with one or more receipts that included the expiration date of her debit card and the last four digits of her card number. (FAC ¶ 35). On or about November 2, 2015, Plaintiff O'Shea's counsel served Defendants with a cease and desist letter demanding that Defendants end their FACTA violations. (*Id.* at ¶ 45). Attached to the letter was a draft complaint. (*Id.*).

On May 2, 2016, Plaintiff Trisal received from Defendants a receipt that "contained, among other things," his credit card's expiration date and the last four digits of his card number. (FAC ¶ 45). The First Amended Complaint does not clarify what these "other things" are.

Plaintiffs allege that Defendants continued to print expiration dates on credit and debit card receipts in violation of FACTA until at least August 17, 2016. (FAC ¶ 45). Plaintiffs also allege that these FACTA violations were willful because Defendants (i) "knew of and were well informed about the law" (*id.* at ¶ 39); (ii) were informed by other entities of FACTA's truncation requirements and the prohibition on expiration dates (*id.* at ¶ 40); (iii) knew their electronic receipt printing equipment was outdated, but forewent the proper updates to avoid spending the money, time, and other resources required (*id.* at ¶ 44); and

3

(iv) were put on notice of their FACTA violations by Plaintiff O'Shea's letter and Complaint (*id.* at ¶ 45). Plaintiffs further allege that because Defendants printed their cards' expiration dates on their receipts, Plaintiffs were exposed to "an increased risk of identity theft and credit and or debit card fraud," though, significantly and fortunately, neither alleges that such identity theft or fraud actually occurred. (*Id.* at ¶ 51).

**B.    Procedural Background**

This case has been significantly impacted by the litigation of another case initially filed in this District: *Crupar-Weinmann* v. *Paris Baguette America, Inc.*, No. 13 Civ. 7013 (JSR) (S.D.N.Y.). During the pendency of this litigation, the Second Circuit has reviewed *Crupar-Weinmann* twice; first in *Crupar-Weinmann* v. *Paris Baguette America, Inc.*, 653 F. App'x 81 (2d Cir. 2016) (summary order) ("*Crupar-Weinmann I*"), and again in *Crupar-Weinmann* v. *Paris Baguette America, Inc.*, 861 F.3d 76 (2d Cir. 2017) ("*Crupar-Weinmann II*"). In brief, Plaintiff Crupar-Weinmann alleged that Paris Baguette violated FACTA by issuing a receipt with the full expiration date of her credit card on it. *Crupar-Weinmann I*, 653 F. App'x at 81. And, as in the instant case, Crupar-Weinmann did not allege any actual harm, such as identify theft or credit card fraud. *Id. Crupar-Weinmann I* and *II* bear directly on the arguments raised by the parties in this case. Consequently, the Court considers the instant case's procedural history in light of both *Crupar-Weinmann* decisions.

4

### 1. Plaintiffs' Pleading and *Crupar-Weinmann I*

Plaintiff O'Shea filed the original Complaint in this matter on November 18, 2015, alleging debit card violations of FACTA. (Dkt. #1). On January 29, 2016, Defendants filed a letter motion requesting an extension of time to answer the Complaint in light of the Second Circuit's then-pending decision in *Crupar-Weinmann I*. (Dkt. #12). Defendants' basis for their request was that the decision in *Crupar-Weinmann I* would address pleading standards for willfulness under FACTA and would "directly impact whether Defendants move to dismiss the Complaint[.]" (*Id.* at 1). The Court granted Defendants' letter motion on February 1, 2016, and stayed this case pending the Second Circuit's decision in *Crupar-Weinmann I*. (Dkt. #13).

The Second Circuit issued *Crupar-Weinmann I* on June 30, 2016. *See Crupar-Weinmann* v. *Paris Baguette America, Inc.*, 653 F. App'x 81 (2d Cir. 2016) (summary order). There, the Second Circuit remanded the case, allowing Crupar-Weinmann to replead her FACTA claim to meet the standard recently established by the Supreme Court in *Spokeo, Inc.* v. *Robins*, 136 S. Ct. 1540 (2016), that plaintiffs alleging statutory violations show concrete injury to establish Article III standing. *Crupar-Weinmann I*, 653 F. App'x at 82.

On July 7, 2016, the parties submitted a joint letter requesting that the Court lift the stay in this case and stating that Plaintiff O'Shea would not amend the existing Complaint despite the concerns *Crupar-Weinmann I* raised about concrete injuries and Article III standing. (Dkt. #18). The Court granted that application in a July 8, 2016 endorsement. (Dkt. #19).

5

On August 11, 2016, Defendants filed a letter announcing their intention to move to dismiss Plaintiff O'Shea's Complaint pursuant to (i) Federal Rule of Civil Procedure 12(b)(1) for failure to establish Article III standing and (ii) Rule 12(b)(6) for failure to state a claim for a willful violation of FACTA. (Dkt. #24). Plaintiff O'Shea filed a letter response on August 15, 2016. (Dkt. #27).

At a conference on August 18, 2016, Plaintiff O'Shea's counsel informed the Court that he had been retained by another plaintiff who had received a credit card receipt from Defendants in May 2016 that violated FACTA, though he did not identify the plaintiff at that time. (Transcript 3:14-4:3). O'Shea's counsel then stated his intention to amend the original Complaint to include credit card violations (at the time, it included only debit card violations (*see* Dkt. #1 at ¶ 33)), to bolster willfulness allegations, and potentially to add a second plaintiff. (Transcript 6:3-19). On September 24, 2016, Plaintiffs O'Shea and Trisal filed the First Amended Complaint, which included all of these proposed modifications. (Dkt. #33).

2. **Defendants' Motion to Dismiss and *Crupar-Weinmann II***

On October 21, 2016, Defendants moved to dismiss the First Amended Complaint. (Dkt. #35-37). Plaintiffs opposed the motion on November 21, 2016 (Dkt. #40-41), and Defendants filed their reply on December 9, 2016, (Dkt. #44).

On June 26, 2017 — while Defendants' motion to dismiss was *sub judice* — the Second Circuit issued *Crupar-Weinmann II*. *See Crupar-Weinmann*

v. *Paris Baguette America, Inc.*, 861 F.3d 76 (2d Cir. 2017). That opinion affirmed the district court's grant of defendant's motion to dismiss because the plaintiff had not alleged "an injury in fact sufficient to establish Article III standing to bring a claim alleging a bare procedural violation of FACTA." *Id.* at 82. That same day, this Court ordered the parties to file supplemental memoranda of law addressing the effect of *Crupar-Weinmann II* on Defendants' motion to dismiss. (Dkt. #52). Defendants and Plaintiffs each filed a Supplemental Memorandum of Law on July 10, 2017. (Dkt. #53-54).

## DISCUSSION

There are two legal issues before the Court: (i) whether Plaintiffs have Article III standing, and (ii) whether the Court should grant Plaintiff Trisal leave to amend the First Amended Complaint. For the reasons set forth below, the Court concludes that Plaintiffs lack Article III standing and that it would be futile to give leave to amend to Plaintiff Trisal.

**A.  Because Plaintiffs Lack Standing, the Court Grants Defendants' Motion to Dismiss Under Rule 12(b)(1)**

  **1.  Applicable Law**

   **a.  Motions to Dismiss under Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to assert lack of subject-matter jurisdiction as a defense by motion. Fed. R. Civ. P. 12(b)(1). To assert federal subject-matter jurisdiction, a party must have Article III standing — "the personal interest that must exist at the commencement of the litigation." *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (citing *Davis* v. *Fed. Election Comm'n*, 554 U.S. 724, 732

7

(2008)).  A standing issue may be raised at any stage in a litigation, *id.* (citing *Arbaugh* v. *Y & H Corp.*, 546 U.S. 500, 506 (2006)), and "'[t]he party invoking federal jurisdiction bears the burden of establishing the[ ] elements' of Article III standing," *id.* (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1997)).

On a Rule 12(b)(1) motion, the challenge to subject-matter jurisdiction may be facial or fact-based.  *Carter*, 822 F.3d at 55.  When considering a facial challenge, a court must determine whether the pleading "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  For purposes of a 12(b)(1) facial challenge, a court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff asserting jurisdiction.  *Id.* (citing *W.R. Huff Asset Mgmt. Co., LLC* v. *Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008); *Lunney* v. *United States*, 319 F.3d 550, 554 (2d Cir. 2003)).  In contrast, to support a fact-based 12(b)(1) challenge, a defendant may proffer evidence beyond the pleadings.  *Id.* (citing *Amidax*, 671 F.3d at 145).  To oppose such a motion, a plaintiff must present controverting evidence "if the affidavits submitted on a 12(b)(1) motion … reveal the existence of factual problems" with respect to jurisdiction.  *Id.* (quoting *Exchange Nat'l Bank of Chi.* v. *Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### b. Article III Standing for FACTA Violations

FACTA requires that businesses exclude certain information from transaction receipts. 15 U.S.C. § 1681c(g). The statute states, in relevant part, that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." *Id.* This Court's treatment of FACTA and a party's ability to claim Article III standing under it are dictated by a trilogy of recent cases detailed below: *Spokeo, Strubel, and Crupar-Weinmann II.*

#### i. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)

In *Spokeo*, the Supreme Court reaffirmed the long-standing "irreducible constitutional minimum" necessary to establish Article III standing in the context of a statutory violation (in that case, a violation of the Fair Credit Reporting Act of 1970, 15 U.S.C. § 1681). 136 S. Ct. at 1542, 1547 (quoting *Lujan*, 504 U.S. at 560). To bring a claim in a federal court, a "plaintiff must have [i] suffered an injury in fact, [ii] that is fairly traceable to the challenged conduct of the defendant, and [iii] that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

Injury in fact is the "[f]irst and foremost" of the standing elements, *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)), and requires a plaintiff to show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent,

9

not conjectural or hypothetical,'" *id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). A concrete injury is one that "actually exist[s]" — meaning it is "'real,' and not 'abstract.'" *Id.* (citations omitted). "[I]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547-48 (quoting *Raines* v. *Byrd*, 521 U.S. 811, 820, n.3 (1997)). Significantly for purposes of the present motion, *Spokeo* held that just because Congress has elevated an intangible harm to a legally cognizable injury does not "automatically satisf[y] the injury-in-fact requirement," and, further, that a "*bare procedural violation*" may be insufficient to confer Article III standing. *Id.* at 1549 (emphasis added) (citing *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 496 (2009)).

### ii. *Strubel* v. *Comenity Bank*, 842 F.3d 181 (2d Cir. 2016)

In *Strubel*, the Second Circuit elaborated on *Spokeo's* effect on plaintiffs alleging bare procedural violations in the context of an alleged violation of the Truth in Lending Act, 15 U.S.C. §§ 1601-1677f. 842 F.3d 181, 189 (2d Cir. 2016). The *Strubel* Court explained that the violation of a "procedural right *in vacuo*" — one without a connection to a concrete interest — does not confer standing. *Id.* (quoting *Summers*, 555 U.S. at 496). In the context of such an intangible harm, the test to determine if a procedural violation constitutes an injury in fact is "whether Congress conferred the procedural right in order to protect an individual's concrete interests." *Id.* And "where Congress confers a procedural right in order to protect a concrete interest, a violation of the

10

procedure may demonstrate a sufficient 'risk of harm' to the underlying interest to establish concrete injury without 'need [to] allege any *additional* harm beyond the one Congress has identified.'" *Id.* (quoting *Spokeo,* 136 S. Ct. at 1549) (emphasis in original).

### iii. *Crupar-Weinmann* v. *Paris Baguette America, Inc.*, 861 F.3d 76 (2d Cir. 2017) ("*Crupar-Weinmann II*")

Finally, in *Crupar-Weinmann II*, the Second Circuit addressed this case law in the context of a claimed FACTA violation. To review, Plaintiff Crupar-Weinmann alleged that a seller included the full expiration date of her credit card on her receipt. *Crupar-Weinmann* v. *Paris Baguette America, Inc.*, 861 F.3d 76, 78 (2d Cir. 2017). But she claimed no further injury, such as identity theft or credit card fraud. *Id.* The Second Circuit held that this injury — "the printing of an expiration date on an otherwise properly redacted receipt" — "does not constitute an injury in fact sufficient to establish Article III standing to bring a claim alleging a bare procedural violation of FACTA." *Id.* at 82.

In reaching this conclusion, the *Crupar-Weinmann II* Court reviewed the legislative history of FACTA to determine if including a card's expiration date on a transaction receipt "present[ed] a material risk of harm to the underlying concrete interest Congress sought to protect" in passing FACTA. *Crupar-Weinmann II,* 861 F.3d at 81. In particular, the Court considered Congress's passage, in 2007, of the Credit and Debit Card Receipt Clarification Act (the "Clarification Act"), which stated that "'[e]xperts in the field agree that proper truncation of the card number, … *regardless of the inclusion of the expiration*

11

*date*, prevents a potential fraudster from perpetrating identity theft or credit card fraud.'" *Id.* (quoting Pub. L. 110-241, § 2(a)(6), 122 Stat. 1565, 1565 (2007) (emphasis added)). The purposes of the Clarification Act were to clarify FACTA, to ensure consumers were protected from actual harm to their identity or credit, and to limit "abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." *Id.* (quoting Pub. L. 110-241, § 2(b), 122 Stat. at 1566).

Ultimately, the Second Circuit found significance, for the standing analysis, in Congress's clarification that printing an expiration date on a receipt did *not* increase the risk of material harm to the identity or credit of a cardholder. *Crupar-Weinmann II*, 861 F.3d at 81. And in turn, the Court held that "the printing of an expiration date on an otherwise properly redacted receipt does not constitute an injury in fact sufficient to establish Article III standing to bring a claim alleging a bare procedural violation of FACTA." *Id.* at 82.

### 2. Analysis

*Crupar-Weinmann II* makes clear that Plaintiffs lack Article III standing. Just as in that case, Plaintiffs here allege only that the expiration dates of their cards were printed on their receipts. Neither alleges that their identities were stolen or that credit card fraud was perpetrated against them. Neither alleges that Defendants publically exposed their receipts in a way that would have increased their risk of material harm. Plaintiffs allege only that they were subjected to "an increased risk of identity theft and credit and or debit card

12

fraud." (FAC ¶ 51). Plaintiff Trisal represents that he can allege that additional information was printed on his receipt, and that this information increased his risk of material harm. (Pl. Supp. 2). But the copy of the Trisal receipt that is on the record of this case is redacted, such that the Court cannot say that he suffered a cognizable harm under FACTA. (Dkt. #37-1). Therefore, the Court concludes that both Plaintiffs lack Article III standing and that Defendants' motion to dismiss must be granted.

There are various arguments that Plaintiffs made in their first opposition brief that no longer stand in the wake of *Crupar-Weinmann II*. First, Plaintiffs argued that their case was distinguishable from *Spokeo* because that case involved procedural rights, while Plaintiffs allege a violation of substantive rights that were sufficient to confer Article III standing. (Pl. Opp. 7-8 (citing *Havens Realty Corp.* v. *Coleman*, 455 U.S. 363, 373-374 (1982))). That argument fails: In *Crupar-Weinmann II*, the Second Circuit explicitly treated the printing of an expiration date on a receipt as a bare procedural violation. *Crupar-Weinmann II*, 861 F.3d at 82. Second, Plaintiffs argued that failure to follow FACTA truncation provisions is a *per se* concrete injury. (Pl. Opp. 10-11). Again, this argument fails in light of *Crupar-Weinmann II*, because printing an expiration date on a receipt, standing alone, is insufficient to confer standing. *Crupar-Weinmann II*, 861 F.3d at 82. Third, Plaintiffs argued that because FACTA protects rights rooted in the common law and because courts should defer to Congress on policy decisions, a violation of FACTA's provisions confers Article III standing. (Pl. Opp. 13-17). But as the *Crupar-Weinmann II*

Court explained, FACTA's legislative history demonstrates the opposite, i.e., Congress's conclusion that printing a card's expiration date on a receipt does not increase the risk of harm that FACTA was designed to prevent — identity theft and fraud. *Crupar-Weinmann II*, 861 F.3d at 81. Put simply, none of the arguments Plaintiffs made in their brief opposing Defendants' motion to dismiss withstand scrutiny after *Crupar-Weinmann II*.

Plaintiffs do little to resist these conclusions in their post-*Crupar-Weinmann II* supplemental brief. They argue that (i) the Second Circuit's decision should not result in dismissal, "[a]t least as to [P]laintiff [ ] Trisal," because he can allege something more than just the printing of his card's expiration date, and (ii) any dismissal for lack of subject-matter jurisdiction must be without prejudice. (Pl. Supp. 1). Defendants respond that the allegations made in the First Amended Complaint are "indistinguishable" from those at issue in *Crupar-Weinmann II* and that the First Amended Complaint should thus be dismissed because Plaintiffs lack Article III standing. (Def. Supp. 1, 3).

Defendants have the better arguments. The allegations in *Crupar-Weinmann II* are the same as those in this case — an expiration date printed on a receipt with no concrete injury. *Crupar-Weinmann II* left no doubt that alleging that a card's expiration date was printed on a receipt, absent some other allegation that elevated the risk of identity theft or fraud to one that is material, is itself insufficient to establish an injury in fact that confers Article III standing. A plaintiff must allege something more. And as Plaintiffs'

14

supplemental brief seemingly acknowledges, *Crupar-Weinmann II* confirms that the First Amended Complaint must be dismissed with respect to Plaintiff O'Shea.

The First Amended Complaint does allege that Plaintiff Trisal's receipt "contained, *among other things*," his card's expiration date and the last four digits of his card number. (FAC ¶ 4 (emphasis added)). But it does not specify what those "other things" are, or what, if anything, makes them significant. Therefore, the First Amended Complaint, even as it relates to Plaintiff Trisal, is on its face "indistinguishable" from the complaint in *Crupar-Weinmann II*. Thus, the First Amended Complaint is not sufficient to establish that either Plaintiff has Article III standing.

But the Court need not limit itself to the First Amended Complaint to determine if Plaintiff Trisal has standing. "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings," including affidavits and exhibits. *Feldheim* v. *Fin. Recovery Servs., Inc.*, — F. Supp. 3d —, 2017 WL 2821550, at *2, No. 16 Civ. 3873 (KMK) (S.D.N.Y. June 29, 2017) (quoting *Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). Defendants attached a copy of the Trisal Receipt to the Declaration of Jonathan A. Direnfeld. (Dkt. #37). But the Receipt is redacted in such a way that the Court cannot determine what additional information beyond the expiration date was printed on it.

15

The only allegation in the First Amended Complaint is that there are "other things" on the Trisal Receipt, and the Receipt itself provides no further information. Thus, the Court cannot say that the "other things" on the Trisal Receipt, alone or in combination with the printing of the expiration date, constitute an injury sufficient to confer Article III standing. Defendants' motion to dismiss is therefore granted in full, and the Court dismisses Plaintiffs' First Amended Complaint. Plaintiffs are correct that this dismissal must be without prejudice. *See John* v. *Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017) ("'[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice,' [because] ... 'without jurisdiction, the district court lacks the power to adjudicate the merits of the case' or 'dismiss a case with prejudice.'" (quoting *Carter*, 822 F.3d at 54-55)). [2]

**B.    Because Amendment Would Be Futile, the Court Denies Plaintiff Trisal's Request for Leave to File a Second Amended Complaint**

Plaintiff Trisal has requested leave to file a Second Amended Complaint. (Pl. Supp. 7). If provided the opportunity, Plaintiff Trisal represents that he would plead that the Trisal Receipt contained (i) the brand of his card, (ii) the last four digits of his card number, (iii) his full name, (iv) his physical address, (v) his telephone number, and (vi) his email address. (Pl. Supp. 2). He also

---

[2]    Because Plaintiffs lack Article III standing, this Court lacks subject-matter jurisdiction to adjudicate Defendants' 12(b)(6) motion. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); see *also Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016) ("[W]here a complaint is dismissed for lack of Article III standing ... [s]uch a dismissal is one for lack of subject matter jurisdiction ... and without jurisdiction, the district court lacks the power to adjudicate the merits of the case." (citations omitted)).

16

proposes to plead that this additional information increased the risk of material harm, such as identity theft or credit card fraud. (*Id.*). Because amendment would not cure Plaintiff Trisal's standing deficiencies, the Court denies his request.

### 1. Applicable Law

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend can be denied if a court finds that it would be futile. *Grullon* v. *City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) (citing *Foman* v. *Davis*, 371 U.S. 178, 182 (1962)). Futility is a legal determination that the proposed amendments would not "cure prior deficiencies" in the pleadings, such as a failure to allege standing. *Pyskaty* v. *Wide World of Cars, LLC*, 856 F.3d 216, 224-25 (2d Cir. 2017) (quoting *Panther Partners, Inc.* v. *Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). "In general, when assessing whether an amended complaint would state a claim, [courts] consider 'the proposed amendment[s] … along with the remainder of the complaint,'" *id.* at 225 (quoting *Starr* v. *Sony BMG Music Entm't*, 592 F.3d 314, 323 n.3 (2d Cir. 2010)), accept as true all non-conclusory factual allegations, and draw all reasonable inferences in the plaintiff's favor, *id.* (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)).

### 2. Analysis

Plaintiff Trisal's request for leave to file a Second Amended Complaint is denied. To begin, the Court notes that the information that the Trisal Receipt

17

allegedly contains is not proscribed by FACTA. FACTA states only that "no person ... shall print more than the last 5 digits of the card number or the expiration date upon any receipt[.]" 15 U.S.C. § 1681c(g). To be sure, it is theoretically possible that the additional information that Plaintiff Trisal alleges was printed on his receipt could increase the risk of identity theft or fraud. But as presented in Plaintiffs' supplemental brief, that risk is no less speculative than the risk alleged in the First Amended Complaint and in *Crupar-Weinmann II*. Put somewhat differently, the Court does not believe that the information contained in the proffered amendments "presents a material risk of harm to the underlying concrete interest Congress sought to protect" in passing FACTA. *Crupar-Weinmann II*, 861 F.3d at 81 (internal citation omitted). Importantly, the card number on the Trisal Receipt was properly truncated. This Court cannot see how the risk of identity theft or fraud is elevated from possible to plausible, or to "a degree of risk sufficient to meet the concreteness requirement," under this set of allegations. *Spokeo*, 136 S. Ct. at 1550. Something more is needed, and the alleged additional information on the Trisal Receipt — none of which is proscribed by FACTA — does not suffice.

The additional information may yield a claim that sounds in negligence. Printing the brand of Plaintiff Trisal's card, the last four digits of his card number, his full name, his physical address, his telephone number, and his email address all on one receipt strikes the Court as potentially less than due care. But Plaintiff Trisal does not hint at a negligence claim in the supplemental brief, and it is not the Court's responsibility to identify possible

claims on his behalf. Because Plaintiff Trisal's proposed amendments would be insufficient to confer Article III standing, they are futile and Plaintiff Trisal's request to amend is denied. *See Berrian* v. *Pataki*, 510 F. Supp. 2d 348, 356 (S.D.N.Y. 2007) (granting motion to dismiss for lack of standing and denying leave to amend because plaintiff could "articulate no set of facts that would confer standing," rendering amendment futile).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is GRANTED, and Plaintiffs' First Amended Complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff Trisal's request for leave to amend is DENIED.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: August 3, 2017
        New York, New York

                                        KATHERINE POLK FAILLA
                                        United States District Judge